## WALKER *v.* CITY OF HUTCHINSON ET AL.

No. 13.  Argued October 15–16, 1956.—Decided December 10, 1956.

*Herbert Monte Levy* argued the cause for appellant. With him on the brief was *A. Lewis Oswald.*

*Fred C. Littooy* argued the cause and filed a brief for appellees.

Opinion of the Court by MR. JUSTICE BLACK, announced by MR. JUSTICE DOUGLAS.

The appellant Lee Walker owned certain land in the City of Hutchinson, Kansas.  In 1954 the City filed an action in the District Court of Reno County, Kansas, to condemn part of his property in order to open, widen, and

extend one of the City's streets. The proceeding was instituted under the authority of Article 2, Chapter 26 of the General Statutes of Kansas, 1949. Pursuant to § 26–201 of that statute [1] the court appointed three commissioners to determine compensation for the property taken and for any other damage suffered. These commissioners were required by § 26–202 to give landowners at least ten days' notice of the time and place of their proceedings. Such notice could be given either "in writing . . . or by one publication in the official city paper . . . ." [2] The appellant here was not given notice

---

[1] Section 26–201 reads in part as follows:

*"Private property for city purposes; survey; ordinance fixing benefit district; application to district court; commissioners.* Whenever it shall be deemed necessary by any governing body of any city to appropriate private property for the opening, widening, or extending any street or alley, . . . the governing body shall cause a survey and description of the land or easement so required to be made by some competent engineer and file with the city clerk. And thereupon the governing body shall make an order setting forth such condemnation and for what purpose the same is to be used. . . . The governing body, as soon as practicable after making the order declaring the appropriation of such land necessary . . . shall present a written application to the judge of the district court of the county in which said land is situated describing the land sought to be taken and setting forth the land necessary for the use of the city and . . . praying for the appointment of three commissioners to make an appraisement and assessment of the damages therefor."

[2] Section 26–202 read in part as follows:

*"Notice to property owners or lienholders of record; appraisement and assessment of damages; reports.* The commissioners appointed by the judge of the district court shall give any owner and any lienholder of record of the property sought to be taken at least ten days' notice in writing of the time and place when and where the damage will be assessed, or by one publication in the official city paper, and at the time fixed by such notice shall, upon actual view, appraise the value of the lands taken and assess the other damages done to the owners of such property, respectively, by such appropriations. For the payment of such value and damages the commissioners shall

in writing but publication was made in the official city paper of Hutchinson. The commissioners fixed his damages at $725, and pursuant to statute, this amount was deposited with the city treasurer for the benefit of appellant. Section 26–205 authorized an appeal from the award of the commissioners if taken within 30 days after the filing of their report. Appellant took no appeal within the prescribed period. Some time later, however, he brought the present equitable action in the Kansas District Court. His petition alleged that he had never been notified of the condemnation proceedings and knew nothing about them until after the time for appeal had passed. He charged that the newspaper publication authorized by the statute was not sufficient notice to satisfy the Fourteenth Amendment's due process requirements. He asked the court to enjoin the City of Hutchinson and its agents from entering or trespassing on the property "and for such other and further relief as to this Court seem[s] just and equitable." [3]   After a hearing, the Kansas trial

assess against the city the amount of the benefit to the public generally and the remainder of such damages against the property within the benefit district which shall in the opinion of the appraisers be especially benefited by the proposed improvement. The said commissioners may adjourn as often and for such length of time as may be deemed convenient, and may, during any adjournment, perfect or correct all errors or omissions in the giving of notice by serving new notices or making new publication, citing corporations or individual property owners who have not been notified or to whom defective notice or insufficient notice has been given, and notice of any adjourned meeting shall be as effective as notice of the first meeting of the commissioners. . . ."

[3] Although the relief prayed for was an injunction against the taking, the Supreme Court of Kansas evidently construed the pleadings as adequately raising the question whether notice was sufficient to assure the constitutionality of the compensation procedure; in its opinion it passed only on § 26–202, dealing with the latter problem. Since Kansas requires a showing of actual damage for standing to maintain an equity suit, *McKeever* v. *Buker*, 80 Kan. 201, 101 P. 991,

court denied relief, holding that the newspaper publication provided for by § 26–202 was sufficient notice of the Commissioners' proceedings to meet the requirements of the Due Process Clause. Agreeing with the trial court, the State Supreme Court affirmed. 178 Kan. 263, 284 P. 2d 1073. The case is properly here on appeal under 28 U. S. C. § 1257 (2). The only question we find it necessary to decide is whether, under circumstances of this kind, newspaper publication alone measures up to the quality of notice the Due Process Clause of the Fourteenth Amendment requires as a prerequisite to proceedings to fix compensation in condemnation cases.

It cannot be disputed that due process requires that an owner whose property is taken for public use must be given a hearing in determining just compensation. The right to a hearing is meaningless without notice. In *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U. S. 306, we gave thorough consideration to the problem of adequate notice under the Due Process Clause. That case establishes the rule that, if feasible, notice must be reasonably calculated to inform parties of proceedings which may directly and adversely affect their legally protected interests.[4] We there called attention to the impossibility of setting up a rigid formula as to the kind of notice that must be given; notice required will vary with circumstances and conditions. We recog-

---

and since the Kansas court took the complaint as alleging damage as a result of the compensation rather than the taking procedure, the pleading was evidently treated by the state court as alleging monetary damage resulting from the lack of notice in connection with compensation. We accept this construction of the complaint by the Kansas court as sufficient allegation of damage. See *Bragg* v. *Weaver*, 251 U. S. 57, where the adequacy of notice of compensation proceedings was passed on by this Court in an injunction suit like this one.

[4] We applied the same rule in *Covey* v. *Town of Somers*, 351 U. S. 141; see also *City of New York* v. *New York, N. H. & H. R. Co.*, 344 U. S. 293.

nized that in some cases it might not be reasonably possible to give personal notice, for example where people are missing or unknown.

Measured by the principles stated in the *Mullane* case, we think that the notice by publication here falls short of the requirements of due process. It is common knowledge that mere newspaper publication rarely informs a landowner of proceedings against his property. In *Mullane* we pointed out many of the infirmities of such notice and emphasized the advantage of some kind of personal notice to interested parties. In the present case there seem to be no compelling or even persuasive reasons why such direct notice cannot be given. Appellant's name was known to the city and was on the official records. Even a letter would have apprised him that his property was about to be taken and that he must appear if he wanted to be heard as to its value.[5]

Nothing in our prior decisions requires a holding that newspaper publication under the circumstances here provides adequate notice of a hearing to determine compensation. The State relies primarily on *Huling* v. *Kaw Valley Railway & Improvement Co.*, 130 U. S. 559. We think that reliance is misplaced. Decided in 1889, that case upheld notice by publication in a condemnation proceeding on the ground that the landowner was a nonresident. Since appellant in this case is a resident of Kansas, we are not called upon to consider the extent to which *Mullane* may have undermined the reasoning of the *Huling* decision.[6]

---

[5] Section 26–202 was amended in 1955, after this Court's decision in *Mullane*, to require that the city must give notice to property owners by mailing a copy of the newspaper notice to their last known residence, unless such residence could not be located by diligent inquiry. Kan. Gen. Stat., 1949 (Supp. 1955), § 26.202.

[6] The State also relies on *North Laramie Land Co.* v. *Hoffman*, 268 U. S. 276, and *Bragg* v. *Weaver*, 251 U. S. 57. But the holdings in

There is nothing peculiar about litigation between the Government and its citizens that should deprive those citizens of a right to be heard. Nor is there any reason to suspect that it will interfere with the orderly condemnation of property to preserve effectively the citizen's rights to a hearing in connection with just compensation. In too many instances notice by publication is no notice at all. It may leave government authorities free to fix one-sidedly the amount that must be paid owners for their property taken for public use.

For the foregoing reasons the judgment of the Supreme Court of Kansas is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

MR. JUSTICE BRENNAN took no part in the consideration or decision of this case.

MR. JUSTICE FRANKFURTER, dissenting.

Appellant contends that the provision of Kan. Gen. Stat., 1949, § 26–202, allowing notice of the hearing on compensation to be given by one publication in the official city newspaper of itself violates the provision of the

---

those cases do not conflict with our holding here. The *North Laramie* case upheld c. 73, § 2, of the 1913 Laws of Wyoming, which provided for notice by publication in a newspaper and required that a copy of the newspaper must be sent to the landowner by registered mail. This Court's opinion stated at p. 282 that: "The Supreme Court of Wyoming held that the procedure followed complied with the statutory requirements. By that determination we are bound." In *Bragg* v. *Weaver, supra,* at pp. 61–62, this Court stated that the controlling Virginia statute provided that a landowner must be notified "in writing and shall have thirty days after such notice within which to appeal. . . . It is apparent therefore that special care is taken to afford him ample opportunity to appeal and thereby to obtain a full hearing in the circuit court."

Fourteenth Amendment that no State shall "deprive any person of life, liberty, or property, without due process of law . . . ." [1]   The first issue that faces us, however, is to decide from the pleadings exactly what it is that we must decide in this case.

Once appellant discovered that his land had been condemned and that the time for appeal from the award of the commissioners had passed, various possible courses of action, followed separately or in combination and each raising different issues, were open to him.   If he considered the award fair but still desired to keep his land, he could have contended that unconstitutionality of the notice for the hearing on compensation invalidated the taking.   If he considered the award unfair, he could have

---

[1] The important statutory provisions of the Kansas condemnation procedure are set forth in the opinion of the Court, except for the provision in Kan. Gen. Stat., 1949, § 26–204, that title to lands condemned for parkways or boulevards vests in the city immediately on publication of the resolution of condemnation and that the city's right to possession of condemned land vests when the report of the commissioners is filed in the office of the register of deeds.   Kan. Gen. Stat., 1949, § 26–204, is as follows:

"That the city clerk shall forthwith, upon any report [of assessment commissioners] being filed in his office, prepare and deposit a copy thereof in the office of the treasurer of such city, and if there be deposited with the city treasurer, for the benefit of the owner or owners of such lands, the amount of the award, such treasurer shall thereupon certify such facts upon the copy of the report, and shall pay said awards to such persons as shall be respectively entitled thereto. . . .   The title to lands condemned by any city for parks, parkways or boulevards shall vest in such city upon the publication of the resolution of the governing body condemning the same.   Upon the recording of a copy of said report so certified in the office of the register of deeds of the county, the right to the possession of lands condemned shall vest in the city and the city shall have the right to forthwith take possession of, occupy, use and improve said lands for the purposes specified in the resolution appropriating the same."

alleged in an appropriate action the unconstitutionality of the notice of the compensation hearing and the inadequacy of the compensation and sought to obtain fair compensation, see *Ward* v. *Love County,* 253 U. S. 17, or to restrain entry onto his land until he received a hearing under Kan. Gen. Stat., 1949, § 26–202, or, making a further allegation of the invalidity of the taking, to obtain a permanent injunction. At this stage, it is not relevant for me to imply any opinion on the merits of any of these possible courses of action.

On a fair reading of the complaint, appellant chose to pursue only the first course. The theory of his action, an attempt to restrain the city from trespassing on his land, is that he still has the right to possession. His petition for injunction based this right to possession solely on the allegation that the statutory notice was insufficient. Nowhere in his petition for an injunction does appellant make any factual allegation that the money deposited by the commissioners did not represent the fair value of his land and therefore left him out of pocket. Nowhere did he indicate that he wanted an injunction only until he received a hearing. The whole theory of his petition is that the property that was being taken without due process of law was his land, not its money value.[2]

In a memorandum filed after oral argument in this Court, appellant contends that the allegation of "irreparable damage" is a sufficient allegation of monetary loss. He states: "Of course, there could be no irreparable damage—indeed there could be no damage at all—unless the amount of the award was less than the actual value of the property. Had this been an action for damages, then an allegation of the differences in value would logi-

---

[2] The complaint in its entirety is set forth in an Appendix at the end of this opinion, *post,* p. 122.

cally have been found in the petition. But it was an injunction proceeding."

But an allegation of "irreparable damage" is merely a legal conclusion, flowing from, and justified by, the necessary allegation of facts warranting injunctive relief. The usual factual assertion underlying such an allegation in a suit to restrain trespass is that the threatened continuous nature of the entry represents the "irreparable damage." Indeed, in his petition for injunction, appellant made the usual factual assertion, immediately preceding the prayer for relief:

> "That at the present moment defendant City of Hutchinson, either itself, or by contractors employed by it, is, or is threatening to enter upon said real estate owned by the Plaintiff, and this for the purpose of building a highway across said real estate, all in utter and complete disregard of the rights of this Plaintiff."

In view of this assertion and the absence of any other assertion with respect to "irreparable damage," appellant's claim that monetary loss is alleged is baseless.

If the Kansas Supreme Court had construed the pleading of "irreparable damage" as implying a factual assertion that the award was less than the fair value of the land, I would accept that construction. See *Saltonstall* v. *Saltonstall*, 276 U. S. 260, 267–268. But the Kansas Supreme Court did not construe the pleadings at all. It decided the case by upholding the constitutionality of the statute. Kansas has a right to make such an abstract determination for itself. This Court, however, can decide only "Cases" or "Controversies." U. S. Const., Art. III, § 2. It has no constitutional power to render advisory opinions. To assume that the Kansas courts construed these pleadings *sub silentio* as alleging monetary loss is to excogitate. A much more probable inference

is that since the issue so controlling for this Court's jurisdiction was not raised in the pleadings, the Kansas court did not concern itself with it. In any event, lacking an explicit construction of the pleadings by the Kansas courts, we must construe the pleadings ourselves to decide what constitutional questions are here raised on the record as it comes to us. See *Doremus* v. *Board of Education,* 342 U. S. 429, 432.

In my view, the only constitutional question raised by appellant is whether failure to give adequate notice of the hearing on compensation of itself invalidates the taking of his land, apart from any claim of loss. We have held many times that the State's interest in the expeditious handling of condemnation proceedings justifies the taking of land prior to payment, without violating the Due Process Clause, so long as adequate provision for payment of compensation is made. See, *e. g., Bragg* v. *Weaver,* 251 U. S. 57, 62. Appellant must be able to show that the provisions for payment, as they operated in his case, were inadequate before he can attack the Kansas statutory scheme for compensation in condemnation cases. See *Ashwander* v. *T. V. A.,* 297 U. S. 288, 347 and cases cited n. 6 (Brandeis, J., concurring); cf. *Smith* v. *Indiana,* 191 U. S. 138, 148–149. Since on the record before us the compensation was not alleged to be inadequate, the taking was valid and the judgment of the Kansas Supreme Court should be affirmed. At the very least, the case should be returned to the Kansas court so that we may have the benefit of its construction of the pleadings. See *Honeyman* v. *Hanan,* 300 U. S. 14.

But the Court, without explicitly construing the pleadings, passes upon the constitutionality of Kan. Gen. Stat., 1949, § 26–202. Without intimating any opinion whether in the circumstances of this case appellant was denied the due process required in determining fair compensation for property taken under the power of

eminent domain, I feel constrained to point out that the Court's decision does not hold the taking itself invalid and therefore does not require the Kansas court to grant an injunction so long as appellant's rights are protected.

[For dissenting opinion of MR. JUSTICE BURTON, see *post*, p. 126.]

### APPENDIX TO DISSENTING OPINION OF MR. JUSTICE FRANKFURTER.

#### "IN DISTRICT COURT OF RENO COUNTY, KANSAS

#### "AMENDED PETITION

"Comes now Lee Walker, the plaintiff herein, by his attorneys, Oswald & Mitchell, and for his cause of action against the City of Hutchinson, Reno County, Kansas, T. E. Chenoweth, City Manager, Robert G. King, Mayor and Members of the City Commission, Charles N. Brown, Jerry Stremel, R. C. Woodward and C. E. Johnson, Members of the City Commission, all of the City of Hutchinson, Reno County, Kansas, respectfully states to the Court:

"2. That the Plaintiff is a resident of Hutchinson, Reno County, Kansas, and that his post office address is 907 East 11th Street, Hutchinson, Kansas; that he is a Negro; that he was born in Bargtown, Kentucky on the 15th day of October, 1875; and that he had, as a youth, an education equivalent to the Sixth Grade.

"3. That Defendant City of Hutchinson, Reno County, Kansas is a municipal corporation; that the above named individual Defendants are respectively T. E. Chenoweth, City Manager, Robert G. King, Mayor and a member of the City Commission, Charles N. Brown, Jerry Stremel, R. C. Woodard and C. E. Johnson, members of the City Commission, all of the City of Hutchinson.

"4. That on or about the 27th day of February, 1905, the Plaintiff acquired fee simple title through a Warranty Deed, duly executed by one Arthur Walker, which deed was duly recorded with the Register of Deeds of Reno County, Kansas, on the 28th day of February, 1905, in Book 85, Page 479, to the following described real estate, all situated in Reno County, Kansas:

"Lots thirty-seven (37), thirty-eight (38), thirty-nine (39), forty (40), forty-one (41), forty-two (42), forty-three (43), forty-four (44), forty-five (45), forty-six (46), forty-seven (47) and forty-eight (48), Block Five (5), Maple Grove Addition to the City of Hutchinson,

"and ever since that time, the Plaintiff has owned same, enjoyed quiet and peaceful possession thereof and likewise has had and enjoyed all the fruits of such ownership, and has paid, from time to time, all assessments and taxes of every kind and nature legally assessed against said real estate; that he is therefore now the legal and equitable owner of said real estate.

"5. That on or about the 12th day of April, 1954, the defendant City of Hutchinson, through its duly elected or appointed, qualified and acting officials, filed an action in the District Court of Reno County, Kansas, entitled:

"In the matter of the application of the city of Hutchinson, Kansas, a municipal corporation, for the appointment of commissioners in the matter of the condemnation of property for the acquisition of right of way for the opening, widening and extending of portions of Eleventh Avenue, Harrison Street and Twenty-third Avenue in the city of Hutchinson, Kansas,

"the same being docketed as Case No. 7867.

"6. That said action was for the purpose of taking from the Plaintiff and condemning certain portions of the above

described real estate, as a by-pass, so to speak, for Hutchinson's Super-Sports Arena.

"7. That the Plaintiff has never been, at any time, notified in any manner that the City of Hutchinson coveted the bit of real estate as a by-pass to Hutchinson's Super-Sports Arena he has owned since 1905; nor has he ever been served with any summons, nor given any other personal notice of any kind whatsoever that said defendant City of Hutchinson had filed the aforesaid action for the purpose of taking a part of his said real estate.

"8. That the pretended right of defendant City of Hutchinson to the real estate above legally described, owned by the Plaintiff, rests upon the authority, so far as this Plaintiff and counsel have been able to ascertain, of G. S. 26–201 and 26–202, and Reno County, Kansas District Court Case No. 7867, more fully described in Paragraph 5 herein, brought thereunder, which statute or statutes are void and of no force and effect whatsoever, because same attempt to vest the power in certain municipalities to take property without due process of law.

"9. That the only notice to an owner of real property, which G. S. 26–201 and 26–202 requires is by publication, which is not sufficient notice under the above mentioned due process clauses of both Federal and State Constitutions.

"10. That the Plaintiff had no actual notice, and did not actually know, or have any reason to know that Defendants sought to condemn and take his land, until approximately the middle part of August, 1954; unless by a peculiar quirk of the imagination, it can be said that the single legal publication, published just once in The Hutchinson News-Herald, and that on the 14th day of April, 1954, gave him notice; that said single notice so published in the official newspaper was not sufficient notice to satisfy the requirements of the Due Process clauses of both Federal and State Constitutions.

"11. That at the present moment defendant City of Hutchinson, either itself, or by contractors employed by it, is, or is threatening to enter upon said real estate owned by the Plaintiff, and this for the purpose of building a highway across said real estate, all in utter and complete disregard of the rights of this Plaintiff.

"12. That the Plaintiff is entitled to an Order of this Court instanter, enjoining and restraining defendant City of Hutchinson from entering upon, or in any manner trespassing upon said real estate, for the reason, inter alia, that there is no other remedy, either at law or in equity, open to the Plaintiff; that if said defendant City of Hutchinson is not so restrained and enjoined, the Plaintiff will suffer irreparable damage by reason thereof.

"13. That the Plaintiff is advised that in some orders by Courts of competent jurisdiction, in the granting of a restraining order, or temporary injunction of this nature, the party seeking same, and obtaining same, is required to post certain indemnity or other type of bond or bonds; that the Plaintiff hereby respectfully and humbly advises the Court that by reason of his limited financial resources, he cannot post such a bond, and therefore asks, upon the above and foregoing statement of facts, that the Court does not make the giving of such a bond or bonds as a condition precedent to Plaintiff's obtaining a restraining order or temporary injunction at this time.

"14. That by reason of the above and foregoing facts, the Plaintiff is entitled to have, and desires to have a permanent injunction against defendant City of Hutchinson, restraining and enjoining it, and its servants, agents and all others in its employment, from entering or trespassing upon the Plaintiff's real estate, above described, or preventing him from otherwise enjoying the quiet and peaceful enjoyment thereof.

"Wherefore and by reason of the foregoing, the Plaintiff prays for an immediate Order of this Court restraining

and enjoining defendant City of Hutchinson from entering or trespassing upon the Plaintiff's real estate, above described, and the Plaintiff further prays for a judgment of this Court permanently enjoining and restraining the City of Hutchinson from entering or trespassing upon Plaintiff's real estate, above described; and Plaintiff further prays for judgment for his costs herein, and for such other and further relief as to this Court seem just and equitable."

MR. JUSTICE BURTON, dissenting.

If the issue in this case is the constitutionality of the statutory provision made for taking the property, its constitutionality seems clear. If, as I assume to be the case, the issue is the constitutional sufficiency of the statutory ten-day notice by publication of the hearing to assess the compensation for the land taken, I consider such a provision to be within the constitutional discretion of the lawmaking body of the State.

In weighing the "due process" of condemnation procedure some reasonable balance must be struck between the needs of the public to acquire the property, and the opportunity for a hearing as to the compensation to be paid for the property. Just compensation is constitutionally necessary, but the length and kind of notice of the proceeding to determine such compensation is largely a matter of legislative discretion. The minimum notice required by this statute may seem to some to be inadequate or undesirably short, but it was satisfactory to the lawmakers of Kansas. It also has been upheld by the Supreme Court of Kansas and the United States Court of Appeals for the Tenth Circuit. To proscribe it as violative of the Federal Constitution fails to allow adequate scope to local legislative discretion. Accordingly, while not passing upon the desirability of the statutory require-

ment before us, I am not ready to hold that the Constitution of the United States prohibits the people of Kansas from choosing that standard. Particularly, I am not ready to throw a nationwide cloud of uncertainty upon the validity of condemnation proceedings based on compliance with similar local statutes. Since 1889, it has been settled that notice by publication in condemnation proceedings to take and to fix the value to be paid for the land of a nonresident comports with due process. *Huling* v. *Kaw Valley R. Co.*, 130 U. S. 559. See also, *North Laramie Land Co.* v. *Hoffman,* 268 U. S. 276, 283–287; *Bragg* v. *Weaver,* 251 U. S. 57.

I agree with the court below and with the opinion of the Court of Appeals for the Tenth Circuit rendered in the comparable case of *Collins* v. *Wichita,* 225 F. 2d 132, which came to our attention at the last term of Court and in which certiorari was denied on November 7, 1955, 350 U. S. 886. Therefore, I would affirm the judgment here.