Walter R. Hart, J.
In this action brought pursuant to article 15 of the Real Property Actions and Proceedings Law to determine and cancel the adverse claim of title by defendant, City of New York, under a deed received following an in rem tax lien foreclosure on real property, defendant moves to dismiss the complaint for insufficiency under CPLR 3211 (subd. [a], par. 7). The matter has been referred to me pursuant to written stipulation of the attorneys for both parties.
The property in question was acquired by a Lizzie Young (also known as Elizabeth Lamar Young and Elizabeth Young) and her husband in 1925. Pursuant to request by plaintiff’s attorney, defendant has located and produced for use on this application a copy of a form dated March 12,1929 which requests the City Department of Finance to send bills for taxes and assessments to “ Mrs. Lizzie Young, 95 Decatur Street, B’klyn.” The face of this card form bears the rubber stamp “ Remove — Returned by P.O.” and the reverse side a rubber stamp date “ May 22, 1963.” An in rem proceeding to foreclose tax liens more than four years in arrears on this property was commenced in 1964 and a deed made and delivered to the City of New York on November 30, 1964. Lizzie Young, apparently then the survivor of an estate by the entirety with her husband, *587 on February 7, 1949 executed a deed to her sister, Sarah Lamar Lee. Lizzie (or Elizabeth) Young died on December 9, 1957 and the deed was recorded December 23, 1959, more than 10 years after its execution. Sarah Lee died on September 1, 1962. The plaintiff here was appointed the administrator d.b.n. of Elizabeth on December 5, 1962 and executor of Sarah on November 23, 1962 in Surrogate’s Court, Kings County. The plaintiff states in his opposing affidavit that the estate of Elizabeth was represented and this property and two others owned by the decedent were managed by two different attorneys since 1957 and that “ unknown to me, it appears that taxes were allowed to go unpaid and to constitute a large lien on all parcels.”
In aid of defendant’s motion, various papers and affidavits attesting to the regularity of the in rem proceeding are submitted. Section D17-6.0 of the Administrative Code of the City of New York which governs requirements for notice upon such foreclosure and which contains precise provisions for publication and posting of the notice of foreclosure states further “ On or before the date of the first publication of the notice above set forth, the director of finance shall cause a copy of such notice to be mailed to the last known address of each owner of property affected thereby, as the same appears upon the records in the office of the director of finance ’ ’. In purported compliance with this provision as to mailing, the office of the director of finance mailed a copy of such notice to “ L. Young, 95 Decatur Street, Brooklyn, New York.” This notice which was returned and is now in the files of the City Collector bears the notation ‘ ‘ Moved — left no address. ’ ’ Plaintiff’s attorney states further that a similar notice addressed to “ Est. of L. Young, c/o Flagg, 79 Decatur Street, Brooklyn, New York,” by registered mail, return receipt requested, was also returned as undeliverable because the addressee was unknown. Plaintiff’s attorney comments: “ This was probably correct since Mr. Flagg had ceased practicing law at that address in 1962 and if anyone did receive that letter, he probably would not have known who the addressee was.” Plaintiff states that to his knowledge all bills for taxes affecting this parcel and the two others previously owned by the deceased had been addressed to “ Mrs. Lizzie Young.” It is his contention that the notice of foreclosure to “ L. Young ” was improper and that the judgment entered in reliance thereon is fatally defective on the assumption that there is a jurisdictional lack of due process here.
*588 The opposing affidavits contain generalized and unsubstantiated statements that the Collector’s office had received notice of new addressees for billing and other purposes. For example, counsel for plaintiff asserts on page 10 of his affidavit: “ The plaintiff has stated that he is sure that the defendant was notified to send any correspondence or tax bills to him c/o Mr. McCarthy some time in 1962 but, unfortunately, he cannot prove this to a certainty by records and does not remember how such notice may have been given other than by telephone conversations and possible correspondence. ’ ’ In particular, counsel for plaintiff repeatedly mentions a “ registration card ” which he claims to have seen in the Collector’s office. In order not to foreclose these avenues to plaintiff and his attorney and to afford them every possible opportunity to bolster their heretofore unfounded claims, and to produce if possible this alleged additional information, counsel for both sides were given leave following submission of this motion to further investigate the records and submit additional affidavits or evidence if they were so advised. A supplemental affidavit made by the attorney for plaintiff recites investigations made by him at the tax office and conversations had with a representative of that office. He states: “ Tour deponent must unfortunately report to this court that the said Mr. Leo denies from his own knowledge that the city has ever maintained a card such as your deponent has herein described. Frankly, since Mr. Leo was quite candid in his review of procedures and details as to procedures involved, your deponent is left at a total loss as to how clear his memory is concerning the alleged lined registration card as hereinabove described.”
Section D17-17.0 of the Administrative Code which permits filing of an in rem notification card by any owner or other interested party provides in part: “ Service of a notice or process shall be made upon such persons who have filed a notice in respect to such premises. Such service may be made personally or by mail to the address designated in said notice. The failure to receive such notice as herein provided shall not effect the validity of any action or proceeding brought pursuant to this title.” There is no proof whatever that any of the deceased parties or their representatives or attorneys or managing agents or successors in interest had ever filed such card. There is no such card on record with respect to the parcel in this action nor indeed any proof that such card was filed with respect to the other two parcels owned by these decedents. It is difficult to believe that such a card might have been filed with respect to one of these parcels and not for either of the *589 others when the owners, attorneys, managing agents and representatives were the same in all three eases.
Defendant explains that the rubber stamp date on the original billing card filed in 1929 would indicate that it was removed to dead files on May 22, 1963 when a bill or other communication was returned by the post office as undeliverable. There was left then in the Collector’s office, among available records at the time of the institution of the in rem proceeding, only the notation of the last owner as “ L. Young.” Plaintiff contends also that the city had information relating to other parcels of the decedents which should have indicated that communications were to be forwarded to an agent or attorney for the estate and that failure to search its files and give notice accordingly on this parcel amounted to a failure of due process.
The sections of the Administrative Code governing these proceedings contain a number of presumptions which support the city’s position. Failure to mail tax bills shall not invalidate the tax (§ D17-16.0). The failure to mail notice of the pending proceedings (§ D17-7.0) or the failure to receive such notice (§ D17-17.0) “ shall not affect the validity ” of any action or proceeding brought pursuant to the title. All taxes, assessments, etc., and the liens thereof which constitute the basis of a proceeding are presumed to be valid (§ D17-11.0). Every deed given following such action is to be considered presumptive evidence that the proceedings and notices required were regular and after two years from date of record of such deed, the presumption is to be conclusive (§ D17-12.0).
In Winona & St. Peter Land Co. v. Minnesota (159 U. S. 526) the United States Supreme Court passed upon requirements for notice in an in rem proceeding substantially similar to that now used in New York City and held valid the provisions for constructive notice by publication as not violative of due process. In Ballard v. Hunter (204 U. S. 241, 262) the court in also sustaining constructive notice in an in rem proceeding, stated: “ Of what concerns or may concern their real estate men usually keep informed, and on that probability the law may frame its proceedings; indeed, must frame them, and assume the care of property to be universal, if it would give efficiency to many of its exercises.” (See, also, Matter of New Rochelle’s Tax Liens, 110 N. Y. S. 2d 392, 394; City of New York v. Lynch, 281 App. Div. 1038 [2d Dept.].) The requirements for. due process have been refined and narrowed in later cases such as Mullane v. Central Hanover Trust Co., (339 U. S. 306); Walker v. City of Hutchinson (352 U. S. 112) and Schroeder v. 'New York (371 U. S. 208) but the basic *590 concepts remain the same. Requirements of due process must be gauged by the property right involved and the persons affected or interested. The proposition is well summed up in Walker v. City of Hutchinson (supra, p. 115) where the court stated: “In Mullane v. Central Hanover Bank & Trust Co., 339 U. S. 306, we gave thorough consideration to the problem of adequate notice under the Due Process Clause. That case establishes the rule that, if feasible, notice must be reasonbly calculated to inform parties of proceedings which may directly and adversely affect their legally protected interests. We there called attention to the impossibility of setting up a rigid formula as to the kind of notice that must be given; notice required will vary with circumstances and conditions. ’ ’
Plaintiff holds that the city was derelict in its obligation to give proper notice by failure to resurrect the card filed in 1929 which indicated that notice was to be given to “ Mrs. Lizzie Young,” by its failure to consult its files in regard to other parcels owned by the deceased and by failing to make a more extensive search and investigation to determine who were the interested surviving parties. Information by one branch of a city government cannot be imputed to another (Hawley v. City of New York, 283 App: Div. 882; City of New York v. Stolpenski, 1 A D 2d 95, 98; Matter of Foreclosure of Tax Liens Pursuant to Title D of Chapter 17 of the Administrative Code of the City of New York, Sup. Ct., Queens County, Christ, J., N. Y. L. J., June 8, 1955 p. 13, col. 6).
There remains for consideration plaintiff’s contention that notice to “ L. Young ” is not adequate where notice to “ Mrs. Lizzie Young ” has been requested and is theoretically available. Plaintiff’s counsel discusses the rules of idem sonans (for the uninitiated, Latin for “ sounds like,” a form of legalistic charades) at great length to establish his point. I frankly do not believe that in the light of all the circumstances discussed above this point is crucial or relevant here but am willing to consider it for whatever it may be worth.
The prevailing rules give no special significance to the prefix “ Mrs.” As stated in Corpus Juris Secundum (vol. 65, Names, §5). “ Ordinarily the prefix ‘ Mr.’ or ‘ Mrs.’ appearing before names of persons are not themselves names or parts of names.” There is, of course, a considerable difference of opinion in various jurisdictions as to whether an initial adequately serves to designate an individual (38 Am. Jur., Name, §§ 11-26; ALE 2d Digest, Name, § 4; 45 ALB 2d 1090; 43 ALE 2d 967; 65 C. J. S., Names, § 6). “ The use of initials, instead of a given name, before a surname, is a common practice, and has *591 come to be recognized as a sufficient statement of the person’s name for most purposes ” (65 0. J. S., Names, § 6). It is my opinion that the use of an initial for the purpose in this proceeding is valid and warranted and constitutes adequate notice for due process. It is inconceivable that the post office would deliver a communication addressed to Mrs. Lizzie Young and fail to deliver the same communication to L. Young at the same address. There are virtually no cases in this jurisdiction on the point. A judgment against “ W. B. Gottleib” was held enforcible against “ William B. Gottlieb ” in Gottlieb v. Alton Grain Go. (87 App. Div. 380, 382, affd. 181 N. Y. 563) where the court stated: “ The judgment is entitled to the presumption of validity [citing cases], and we know of no law prohibiting the use of these letters as a given or Christian name.” The Gottlieb case was cited as precedent in Coakley v. Rickard (136 App. Div. 489, 492) where the court held that for the purposes of attachment and commencement of a suit in this State upon a foreign judgment the defendant, George L. Rickard, was adequately identified as G. L. Rickard. Nearer to the facts at issue here is a case in another jurisdiction involving entry of a default judgment for unpaid real estate taxes due from Thomas B. Ward, William A. Ward, Jr., Mattie M. Coppedge and Dorothy McLarty upon the basis of service upon T. B. Ward, W. A. Ward, M. M. Coppedge and D. Ward [McLarty] who did not appear in person or by attorney which the court held to be a valid judgment against these parties (Ward v. Morton, 294 Mo. 408, 422). In making its determination the court stated: “In 29 Cyc. 269, it is said that ‘ the use of initials, however, instead of a Christian name, before a surname, is a common practice, and has come to be recognized as a sufficient statement of the person’s name.’ See, also, Elrod v. Carroll (Mo. Sup.) 202 S. W. 4 * * * —all of which cases sustain the same
doctrine.” Another case in a sister State covering the same theory is that of Illinois Cent. R. R. Co. v. Ilasenwinkle ('232 111. 224, 227-228), where the court held notice sent to “ J. H. Burtis” as owner of a lot, where required to be given to ‘1 John F. Burtis ’ ’, was valid and sufficient in a condemnation proceeding. “ The law presumes nothing in favor of the jurisdiction of a court exercising special statutory powers, such as those given by the statute under which the court acted * * * and the record must affirmatively show the facts necessary to give jurisdiction. * * * While a letter of the alphabet does not constitute a name, yet the initial letter of the Christian name is so commonly used that it is to be regarded, *592 not as the name of some other person, but as an abbreviation of the Christian name of the person intended.”
In McCoun v. Pierpont (232 N. Y. 66, 71), where the court assumed that the failure to pay the tax was “inadvertent”, the court stated: “ The hardship does not justify us in magnifying microscopical defects and using them as an excuse for a refusal to enforce the statute.” I had occasion to cite that case and differentiate it from a matter which I was called upon to consider and decide sometime ago. The situation in which plaintiff finds himself here is not, as counsel contends, at all comparable to that of the plaintiff in the case of Matter of Foreclosure of Tax Liens, etc., Borough of Brooklyn (133 N. Y. S. 2d 659) where I felt it appropriate to invoke the equitable powers of the court to void a tax lien foreclosure based upon a default in payment of a $12.15 water charge. There has been in this case a consistent pattern of delay, delinquency in payment of tax charges and apparent mismanagement of the parcels of real property formerly owned by the decedents. Among other facts which would dissuade a court of equity to lend assistance, if it were possible here, is the circumstance that plaintiff’s counsel attended at the Department of Finance within the four-month period permitted for redemption and yet no redemption was effected. Counsel states by way of excuse that there were not sufficient funds for the purpose at that time.
There appear to have been here four devolutions of title since 1925 when Lizzie Young and her husband first acquired ownership of the parcel — three by death and one by deed (recorded 10 years late). The property has been variously managed by two attorneys, an executor and an administrator d.b.n. and not once since the original notice was filed in 1929 did any of them consider it wise or expedient to apprise the City Collector of a sufficient name or address for billing purposes and in rem notification. ‘ ‘ All persons having property located within a State and subject to its dominion must take note of its statutes affecting the control or disposition of such property, and of the procedures which they set up for those purposes. Among the many areas in which this rule is applied are proceedings for the assessment of taxes, condemnation of land ” (42 N. Y. Jur., Notice and Notices, § 12). As stated in City of New York v. Lynch (281 App. Div. 1038) : “ Respondents, as owners of the subject property, were bound to keep themselves informed as to what was transpiring with reference to their property.” Plaintiff’s counsel himself states at page eight of his supplementary affidavit that the fact that plaintiff has produced *593 correspondence concerning possible foreclosure actions on two other properties 1 ‘ is some indication that such a letter should also have been sent approximately the same time to the said Mrs. Lizzie Young concerning the subject property.” We live in a complex and impersonal world and age. If New York be one of the largest cities in that world and age, the complexities are so much more compounded. There are those who prefer it so. It is no part of this court’s function to assay the merits or disadvantages of such a milieu. Considering the millions of residents and taxpayers residing in this city, in situations such as this instant matter, the city requires a summary and comparatively simple procedure to restore properties to tax rolls or useful purposes. Indulgence of plaintiff’s objections and theories to this procedure would open a Pandora’s box for the city and would largely nullify the statutes.
Plaintiff states also that a water and sewer bill for 1960, which was within the four-year period of tax deficiencies against the property, was paid and that “any part payment of such open amount made within four years prior to the filing of the lien of delinquent taxes by the Department of Finance would prevent the City from foreclosing or from gaining good title”. He is mistaken. If any tax, assessment or water charge is open for four years or more, that deficiency alone is sufficient to justify the foreclosure. Haphazard payment of an isolated item during the four-year period does not toll the period for an additional four years.
Defendant’s notice of motion labels it as an application pursuant to CPLR 3211 (subd. [a], par. 7) to dismiss for insufficiency. Yet the prayer for relief in the accompanying affidavit is for summary judgment. Plaintiff has affirmatively requested in his opposing papers that summary judgment be rendered in his favor. In the court’s discretion this is treated as a motion for summary judgment pursuant to CPLR 3211 (subd. [c]). Accordingly, defendant’s'motion is granted and the Us pendens is cancelled. Motion for summary judgment by plaintiff is denied.