

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

## No. 08-24-00063-CV

---

White Star Energy, Inc. and County Royalty Acquisition Program, Inc.
d/b/a Reagan County Royalty Company, Inc., Appellants

v.

Ridgefield Permian Minerals, LLC, Appellee

---

On Appeal from the 112th District Court
Reagan County, Texas
Trial Court No. CV02505

---

## **OPINION**

This permissive appeal stems from one of a series of cases involving mass tax foreclosure suits filed in West Texas in 1999. Among the hundreds of mineral interests foreclosed in the underlying tax suit were certain interests owned by Anne Mounts Bradford. Appellants White Star Energy, Inc. and County Royalty Acquisition Program, Inc. d/b/a Reagan County Royalty Company, Inc. (collectively, White Star) purchased some or all of these interests at a tax sale on

July 6, 1999.[1] In 2021, Appellee Ridgefield Permian Minerals, LLC purchased Bradford's remaining interests, if any. Ridgefield then sued White Star, bringing trespass-to-try-title and quiet-title claims, among others.

Both sides moved for summary judgment. The trial court granted Ridgefield's motion, denied White Star's motion, and, damages not yet having been addressed by the parties, permitted White Star to file this permissive interlocutory appeal.[2] We vacate the trial court's summary judgment and remand the case for further proceedings.

## I. BACKGROUND

In 1982, Bradford acquired mineral interests in Section 46, Block 36, Township 5 South, T&P RR Co. Survey, Reagan County, Texas. Specifically, she acquired an undivided one-third mineral interest in the East Half (Tract A) of the property and an undivided one-twenty-fourth mineral interest in the West Half (Tract B). By 1999, like many mineral interest owners in the area, Bradford was allegedly delinquent in paying her property taxes.

What followed next somewhat resembles what occurred in Reeves County as described in *Mitchell v. MAP Resources, Inc.*, 649 S.W.3d 180, 184–86 (Tex. 2022). In short, like the taxing authorities there, the Reagan County taxing authorities here filed a tax foreclosure suit against numerous mineral interest owners, effected service solely by posting, and obtained a default judgment against all defendants. And like the Mitchell heirs, who asserted that at the time of the

---

[1] White Star asserts that all of Bradford's interests in the property at issue were conveyed at the tax sale; Ridgefield asserts that only some, if any, of her interests were conveyed. As explained below in n.3 of this opinion, the scope of interests that may have been conveyed is not before us.

[2] As explained below, the appeal came to this Court on the following controlling questions:

(1) Does [Ridgefield] have standing to assert the tax foreclosure judgment is void for lack of due process? and

(2) Do any of the limitations and other clauses in the Tax Code [§§] 34.08(a), 34.08(c), or 33.54 apply to [Ridgefield's] claims?

tax judgment, deed records on file contained an address for Elizabeth Mitchell, here Ridgefield asserts that the 1998 and 1999 Reagan County Mineral Tax Rolls contained an address for Bradford. *See id.* at 184. Following the tax judgment, White Star purchased Bradford's foreclosed mineral interests at a tax sale and recorded its sheriff's deed in August 1999.

More than two decades later, in October 2021, Ridgefield purchased Bradford's remaining mineral interests, if any, in the subject property, then filed this suit against White Star, bringing trespass-to-try-title, quiet-title, declaratory-judgment, unjust-enrichment, and money-had-and-received claims. Ridgefield's claims are all rooted in its contention that it holds superior title because the tax suit judgment against Bradford is void. More specifically, Ridgefield contends Bradford's due-process rights were violated in the tax suit because service by posting was improper, thus the resulting default judgment was void and nothing was transferred in the sale of her mineral interests to White Star.

Both sides moved for summary judgment. Ridgefield filed a traditional motion, arguing that (1) the tax judgment against Bradford was void because her due-process rights were violated by improper service of the tax suit, thus no interest was conveyed to White Star; and (2) no Tax Code requirements apply to its claims, as the tax judgment was void. Among the exhibits attached to Ridgefield's motion were purported copies of 1998 and 1999 Reagan County Mineral Tax Roll records reflecting a street address for Bradford.

In turn, White Star filed a traditional and no-evidence motion, arguing that (1) Ridgefield lacks standing to assert that Bradford's right to due process was violated; and (2) Ridgefield's suit is barred under several provisions of the Tax Code, including the one-year statute of limitations under § 33.54(a). White Star also filed objections to Ridgefield's summary judgment evidence, including an objection that the purported tax roll pages submitted were unauthenticated. The record

3

reflects no ruling on these objections but includes a motion requesting a ruling and a written objection to the trial court's refusal to rule.

The trial court initially granted Ridgefield's motion for summary judgment without stating any grounds. After White Star filed a motion for permissive appeal and both sides submitted related memoranda and additional briefing, the trial court signed an amended interlocutory summary judgment granting Ridgefield's motion for summary judgment, denying White Star's motion, giving its reasons for doing so, and permitting White Star to pursue an interlocutory appeal. The amended judgment did not address damages, which the parties had not yet briefed.

As to the basis for the trial court's rulings, the amended judgment included (1) findings that the 1999 tax suit judgment "was and is void as to [Bradford] . . . because the court in that suit failed to obtain personal jurisdiction[,]" "the Sheriff's Deed did not convey any of [Bradford's] interests," and "none of the provisions of the Texas Tax Code providing a bar or condition precedent to suit apply . . . nor does standing present any bar to [Ridgefield's] claims"; and (2) conclusions that "[White Star's] claims to superior title running through the Sheriff's Deed fail[,]" and "[Ridgefield] established its claim to title through [Bradford] as the common source of title and prevailed on its trespass to try title claim and quiet title claims."

Further, the amended judgment granted White Star permission to pursue an interlocutory appeal based on the following controlling questions of law:

(1)  Does [Ridgefield] have standing to assert the tax foreclosure judgment is void for lack of due process? and

(2)  Do any of the limitations and other clauses in the Tax Code [§§] 34.08(a), 34.08(c), or 33.54 apply to [Ridgefield's] claims?

In addition, the amended judgment found that an "immediate appeal . . . will materially advance the ultimate termination of the litigation because if these controlling issues of law are

4

resolved in [White Star's] favor, [Ridgefield] will be barred from litigating [its] claims"; and "if these controlling issues of law are resolved in [Ridgefield's] favor, there will be no procedural or jurisdictional bars preventing [Ridgefield's] claims."

After the amended judgment was entered, White Star filed a petition for permissive appeal, which we granted. Following oral argument, we invited the parties to submit additional briefing on the issue of whether "the tax judgment against Bradford violated her due process rights and was therefore void." Both sides submitted supplemental briefs on this issue.

## II. PERMISSIVE APPEAL

Permissive appeals are governed by Texas Civil Practice and Remedies Code § 51.014(d)–(h), Texas Rule of Civil Procedure 168, and Texas Rule of Appellate Procedure 28.3. Such an appeal involves several steps. First, the order being appealed must "identify the controlling question of law as to which there is a substantial ground for difference of opinion" and "state why an immediate appeal may materially advance the ultimate termination of the litigation." Tex. R. Civ. P. 168; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d) (requiring same). While both § 51.014(d) and Rule 168 refer to "controlling question of law" in the singular, multiple controlling questions may be certified. *See Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 142 (Tex. 2022) (identifying multiple controlling questions). The controlling questions must be questions of law unconstrained by procedural or factual issues. *Aris Water Sols., Inc. v. Stateline Operating, LLC*, No. 08-25-00031-CV, 2025 WL 1207315, at *2 (Tex. App.—El Paso Apr. 25, 2025, no pet.) (mem. op.); *Archibald v. El Paso Orthopedic Surgery Group, P.A.*, No. 08-22-00091-CV, 2023 WL 2214184, at *5 (Tex. App.—El Paso Feb. 24, 2023, no pet.) (mem. op.); *see also El Paso Tool & Die Co., Inc. v. Mendez*, 593 S.W.3d 800, 805 (Tex. App.—El Paso 2019, no pet.) (dismissing permissive appeal in part because evidence reflected disputed facts); *Diamond*

5

*Prods. Int'l, Inc. v. Handsel*, 142 S.W.3d 491, 494 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ("The statute does not contemplate permissive appeals of summary judgments where the facts are in dispute.").

After the controlling questions have been certified by the trial court, the appealing party must file a petition for permissive appeal with the appellate court, and the non-appealing party must be given an opportunity to respond or file a cross-petition. Tex. R. App. P. 28.3; Tex. Civ. Prac. & Rem. Code Ann. § 51.014(f).

The appellate court must then decide whether to hear the appeal, which it has discretion to accept or deny. *Sabre Travel Int'l, Ltd. v. Deutsche Lufthansa AG*, 567 S.W.3d 725, 732 (Tex. 2019); Tex. R. App. P. 28.3(j). In exercising its discretion, the appellate court is guided by the legislative intent behind § 51.014(d): to favor "early, efficient resolution of determinative legal issues[.]" *Sabre*, 567 S.W.3d at 732; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(f) (appellate court "*may* accept an appeal permitted by [§ 51.014(d)]" if appellant shows why immediate appeal is warranted) (emphasis added).

If the appeal is granted, the appellate court proceeds to "address the merits of the legal issues certified," including "all fairly included subsidiary issues and ancillary issues pertinent to resolving the controlling legal issue." *Elephant Ins.*, 644 S.W.3d at 147 (citing Tex. R. of App. P. 38.1(f), 53.2(f)).

If the appeal is denied, the appellate court must explain the reason for the denial. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(g); Tex. R. App. P. 28.3(l). The Texas Supreme Court may review the denial de novo. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(h); Tex. R. App. P. 28.3(l).

## III. WHETHER EVIDENCE OF A DUE PROCESS VIOLATION WAS PRESENTED

### A. Standard of review

We review a trial court's rulings on cross-motions for summary judgment de novo,

considering all the evidence submitted, determining all the questions presented, and rendering the judgment the trial court should have rendered. *Thompson v. Landry*, 713 S.W.3d 372, 376 (Tex. 2025). A traditional summary judgment movant has the burden to submit sufficient evidence to establish on its face that "there is no genuine issue as to any material fact" and that the movant is "entitled to judgment as a matter of law." *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014) (citing Tex. R. Civ. P. 166a(c)). That is, the movant "must conclusively prove every essential element of his claim or defense as a matter of law." *George Fleming and Fleming & Associates, L.L.P. v. Wilson*, 694 S.W.3d 186, 190 (Tex. 2024). If the movant meets that burden, the burden then shifts to the non-movant to disprove or raise an issue of fact as to at least one of those elements. *Amedisys*, 437 S.W.3d at 511.[3]

## B. No evidence of lack of diligence in service

White Star's traditional motion for summary judgment sought, among other things, to establish an affirmative defense under Tax Code § 33.54(a), which provides that "an action relating to the title to property may not be maintained against the purchaser of the property at a tax sale unless the action is commenced . . . before the first anniversary of the date that the deed executed

---

[3] Ridgefield contends the standard of review should further include the following: "When, as here, the trial court's summary judgment order does not state the basis for [its] decision, the [appellate] [c]ourt must uphold the order if any of the theories advanced in the motion are meritorious," citing *Provident Life & Accid. Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). However, *Provident* is inapplicable here, as the trial court's order *did* state the basis for its decision, including the court's findings that the 1999 tax suit judgment "was and is void as to [Bradford] . . . because the court in that suit failed to obtain personal jurisdiction," "the Sheriff's Deed did not convey any of [Bradford's] interests[,]" and "none of the provisions of the Texas Tax Code providing a bar or condition precedent to suit apply . . . nor does standing present any bar to [Ridgefield's] claims" as well as the resulting conclusions that "[White Star's] claims to superior title running through the Sheriff's Deed fail[,]" and "[Ridgefield] established its claim to title through [Bradford] as the common source of title and prevailed on its trespass to try title claim and quiet title claims." In contrast, the order did not address Ridgefield's alternative theory that, even if the tax judgment was valid, "the Sheriff's Deed only conveyed the royalty interests in the Merchant Unit Tract 3 well(s) in Tract B owned by Bradford and did not convey the underlying minerals in the Subject Tract or any of the Tract A Interest, which remained with Bradford and are now owned by Ridgefield." Nor was this alternative theory fully briefed by the parties. As a result, we decline to consider it. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996) (holding that in interest of judicial economy, appellate court may consider alternative grounds not ruled on by trial court, but declining to do so in absence of full briefing by the parties, among other factors).

to the purchaser at the tax sale is filed of record[.]" *See* Tex. Tax Code Ann. § 33.54(a).

In response, Ridgefield did not dispute that this suit was commenced more than 20 years after White Star acquired its interest in the property at issue at a tax sale. Instead, Ridgefield argued that its trespass-to-try-title claim merely required it to make a prima facie showing of good title from a common source, i.e., Bradford, to shift the burden to White Star to show it had superior title. Ridgefield maintained that White Star "cannot avoid [its] burden of proof by invoking the statute of limitations" and "cannot . . . just claim victory through limitations[.]" However, Ridgefield cited no authority for the proposition that a trespass-to-try-title claim is not subject to § 33.54(a), and it did not explain how, under the plain language of § 33.54(a), a trespass-to-try-title claim would not constitute "an action relating to the title to property[.]" Further, as White Star noted, other courts of appeals have held that trespass-to-try-title claims are subject to § 33.54(a). *See, e.g.*, *Haynes v. DOH Oil Co.*, 647 S.W.3d 793, 800 (Tex. App.—Eastland 2022, no pet.) (holding that trespass-to-try-title claim was barred by § 33.54(a)); *Roberts v. T.P. Three Enterprises, Inc.*, 321 S.W.3d 674, 679 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (same); *Session v. Woods*, 206 S.W.3d 772, 779 (Tex. App.—Texarkana 2006, pet. denied) (same).

Such cases are inapplicable here, Ridgefield argued, because "the Texas Supreme Court [has] held in no uncertain terms that a void judgment [i]s always subject to challenge and no limitations bar applie[s]," citing *Mitchell*, 649 S.W.3d at 194. And Ridgefield contended that as in *Mitchell,* here too "the tax suit court lacked personal jurisdiction over the common-source [taxpayer] defendant because the taxing entity violated her due process rights by failing to exercise any diligence towards locating her or effecting personal service before serving by posting."

However, the law governing this case has developed meaningfully since the summary judgment proceedings were ruled on in the trial court in February of 2024. In particular, in April

8

of 2024, the Texas Supreme Court clarified (1) which side has the burden of proof as to whether a due-process violation in the underlying tax suit renders the limitations provision in § 33.54(a) inoperable; and (2) whether a defendant taxpayer's address found in a public record is by itself sufficient to prove such a violation. *Gill v. Hill*, 688 S.W.3d 863 (Tex. 2024). While *Mitchell* held that "citation by publication or posting violates due process when the address of a known defendant is readily ascertainable from public records," 649 S.W.3d at 190—language Ridgefield cites in its supplemental brief—*Gill* clarified that the *Mitchell* plaintiffs "presented evidence . . . showing an address at which the former property owner . . . *could have been reached and notified* of the foreclosure suit." 688 S.W.3d at 869–70 (emphasis added).

Here, in contrast, while Ridgefield presented purported copies of tax roll pages showing an address for Bradford, it presented no evidence that Bradford "could have been reached and notified" at this address. As a result, White Star contends, "on the summary judgment record provided, it is impossible . . . to determine whether Bradford's due process rights were violated," thus "Ridgefield did not satisfy its burden to establish same as a matter of law." Ridgefield, in turn, maintains "its burden [wa]s to show its claim to the title, which then put[] [White Star] to the burden to prove superior title," a burden the trial court found White Star "could not meet." We agree with White Star that it was Ridgefield's burden to prove—not White Star's burden to disprove—that Bradford's due-process rights were violated. In reaching this conclusion, we are guided by *Gill*.

*Gill* arose out of the same 1999 tax foreclosure suit as *Mitchell*. *Id*. at 866, 868. Like the *Mitchell* defendants, the *Gill* defendants purchased certain mineral interests at the associated tax foreclosure sale and, more than a decade-and-a-half later, were sued by successors-in-title to the prior owners who had been adjudged delinquent. *Id*. at 866. The *Gill* plaintiffs claimed their

predecessors' due-process rights were violated by improper service by posting in the tax suit. *Id.* However, the *Gill* plaintiffs presented no evidence of a due-process violation. *Id.* at 868, 871. In an attempt to overcome this deficiency on appeal, the *Gill* plaintiffs asked the Texas Supreme Court to take judicial notice of its own conclusion in *Mitchell* that Elizabeth S. Mitchell was improperly served in the 1999 tax suit, arguing that if service by posting was improper for one defendant in that suit, the same was true for the others. *Id.* at 871.

The high court rejected this argument for two reasons. First, it explained that appellate courts may take judicial notice only of facts either "generally known within the trial court's territorial jurisdiction" or "accurately and readily determin[able] from sources whose accuracy cannot reasonably be questioned," neither of which category includes facts such as "whether a particular type of notice comports with due-process." *Id.* Second, it explained that whether due process was afforded a particular party is an "individualized inquiry," and "the facts that made notice by posting insufficient . . . in *Mitchell* do not necessarily make notice by posting improper for [the *Gill* plaintiffs' predecessors]":

> [T]he appropriate level of diligence needed to satisfy due process is an individualized inquiry. If the evidence shows that [the *Gill* plaintiffs' predecessors] w[ere] nowhere to be found after a diligent inquiry, then alternative service by posting may have sufficed. *See Mullane* [*v. Central Hanover Bank & Trust Co.*], 339 U.S. [306,] 318, 70 S.Ct. 652, 94 L.Ed. 865 [(1950)] (distinguishing the appropriate notice for those "whose interests or addresses" are unknown); *Walker v. City of Hutchinson*, 352 U.S. 112, 116, [77 S.Ct. 200, 1 L.Ed.2d 178], [ ] (1956) ("[I]n some cases it might not be reasonably possible to give personal notice, for example where people are missing or unknown."); *see also Mitchell*, 649 S.W.3d at 189–90 (discussing what distinguishes the adequacy of notice by posting versus notice by service). Unlike the petitioners in *Mitchell*, the [*Gill* plaintiffs] adduced no individualized proof regarding the ease or difficulty with which [their predecessors] could have been located and served.

*Id.* As a result, in the absence of such individualized proof, the Texas Supreme Court concluded that the trial court in *Gill* correctly granted, and we correctly affirmed, summary judgment in favor

of the defendants, i.e., the parties who acquired the property at the tax sale. *Id.*

Further, as to who carries the burden of proof, *Gill* explained that there are two types of defenses a non-movant might raise in response to a limitations affirmative defense: (1) those that argue certain days should not be counted, which place the burden on the movant; and (2) those that concede limitations expired yet argue limitations should not apply, which place the burden on the non-movant. *Id.* at 870. Ultimately, the distinction is between defenses that toll certain days and defenses that avoid limitations entirely. *Id.* A defense that the one-year-limitations period under § 33.54(a) expired before suit was filed yet limitations should not apply because of a due-process violation in the underlying tax suit falls under the latter category, thereby placing the burden of proof on the non-movant, here Ridgefield. *See id.* at 870–71.

As White Star notes, Ridgefield produced neither "any 'individualized proof regarding the ease or difficulty' with which Bradford could have been located and served," nor "evidence that the address [found in the purported tax rolls] was one at which Bradford could be reached for service."[4] And again, Ridgefield does not dispute that this suit was commenced more than 20 years after White Star acquired its interest in the property at a tax sale, and points to nothing that would preclude it from being barred under § 33.54(a) other than the alleged violation of Bradford's due-process rights. As a result, we conclude that the trial court erred by (1) denying White Star's motion for summary judgment based on its limitations affirmative defense under § 33.54(a),[5] and (2)

---

[4] White Star also contends that "Ridgefield's only evidence of a due process violation is inadmissible" because the purported copies of tax roll pages submitted were unauthenticated. We need not and do not reach this evidentiary issue since an address in a public record by itself would not suffice to satisfy Ridgefield's burden to submit "individualized proof regarding the ease or difficulty with which [their predecessors] could have been located and served." *Gill*, 688 S.W.3d at 871 (describing applicable burden).

[5] Because we conclude that the trial court erred in denying White Star's motion for summary judgment in relation to Tax Code § 33.54(a), we need not and do not address whether it might also have erred in relation to its rulings in relation to Tax Code §§ 34.08(a) and (c). Further, absent a due-process violation in the tax suit, which has not yet been established, it would be premature to decide whether Ridgefield might have standing to assert that the tax suit judgment

11

granting Ridgefield's motion for summary judgment.

## IV. CONCLUSION

Because we conclude that the trial court erred in denying White Star's motion for summary judgment and in granting Ridgefield's motion for summary judgment based on legal developments after the trial court judgment was entered, we vacate the judgment and remand for further proceedings consistent with this opinion rather than reverse and render judgment in White Star's favor. *See* TRAP 43.3(b) ("When reversing a trial court's judgment, the court must render the judgment that the trial court should have rendered, except when: . . . the interests of justice require a remand for another trial."); *see also Parker v. Pidgeon*, 477 S.W.3d 353, 355 (Tex. App.—Houston [14th Dist.] 2015) (reversal of trial court's order and remand for further proceedings may be based on "substantial change in the law"), *rev'd sub nom. on other grounds, Pidgeon v. Turner*, 538 S.W.3d 73 (Tex. 2017); *id.* n.3 ("We have broad discretion to remand a case in the interest of justice after reversing the trial court's judgment[,]" and "[w]e may exercise our discretion to remand as long as there is a probability that the case, for any reason, has not been fully developed.").

LISA J. SOTO, Justice

October 31, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.
Palafox, J., dissenting (opinion forthcoming)

---

was or is void based on such a violation or, if such standing exists, whether White Star might possess equitable defenses to a due-process claim. *See Thompson v. Landry*, 713 S.W.3d 372, 381 (Tex. 2025) ("Equitable defenses are . . . available to a subsequent purchaser when the former owner obtains notice of the purchaser's title to the property outside the limitations period but unreasonably delays in seeking relief to the detriment of the purchaser."). Accordingly, we do not address these issues either.