INTERNATIONAL CONTROLS CORP.,
Plaintiff-Appellee,

v.

Robert L. VESCO, Defendant-Appellant.

INTERNATIONAL CONTROLS CORP.,
Plaintiff-Appellee,

v.

Robert L. VESCO, Harry L. Sears, Frank G. Beatty, Norman LeBlanc, Stanley Graze, Milton F. Meissner, Ulrich J. Strickler, Richard E. Clay, Wilbert J. Snipes, Frederic J. Weymar, Gilbert R. J. Straub, C. Henry Buhl, III, Ralph P. Dodd, Alwyn Eisenhauer, George Phillipe, Joel Grady, Shirley Bailey, Vesco & Co., Inc., IOS Ltd., Columbus Trust Company, Limited, Bahamas Commonwealth Bank, International Bancorp, Kilmorey Investments Ltd., Value Capital Ltd., Global Holdings Ltd., Global Financial Ltd., Butlers Bank, Ltd. (Now Known as Who Holdings Ltd.), Allan J. Butler, Bank Cantrade Ltd., Fairfield Aviation Corporation, Fairfield General Corporation, Skyways Leasing Corporation and Marine Midland Bank, New York, Defendants,

Robert L. Vesco, Defendant-Appellant.

Nos. 159, 323, Dockets 78–7279, 78–7092.

United States Court of Appeals,
Second Circuit.

Argued Oct. 6, 1978.

Decided Jan. 24, 1979.

168

Robert D. Foglia, New York City, for defendant-appellant.

Milton S. Gould, New York City (Daniel L. Carroll, Thomas J. Johnson and Shea, Gould, Climenko & Casey, New York City, on brief), for plaintiff-appellee.

Before MEDINA and MANSFIELD, Circuit Judges, and WARD, District Judge.*

MEDINA, Circuit Judge:

We have before us two consolidated appeals by Robert L. Vesco. The first is from an order of Judge Charles E. Stewart, Jr., dated February 1, 1978, denying a motion pursuant to F.R.C.P. 60(b)(4) by Vesco, on certain papers and "on all the proceedings heretofore had herein" to vacate a default judgment entered against him on October 5, 1973. The second is from another order of Judge Stewart entered on May 3, 1978, denying a motion by Vesco in an entirely different action, also made "upon all of the proceedings heretofore had herein," to vacate a default judgment entered on September 11, 1974. We shall proceed with the first appeal, leaving the second until the end of this opinion. Judge Stewart's opin-

* District Judge of the Southern District of New York, sitting by designation.

ions in the two cases are not officially reported.

After probing and analyzing a considerable number of side issues, digressions and a morass of procedural detail raised in the briefs and on the oral argument of the appeals, we have concluded to affirm, as dispositive of the two appeals, Judge Stewart's findings that: (1) the service of the summons and complaint on Vesco on July 30, 1973 at his Brace Ridge Road residence in Nassau, Bahamas, gave the Court *in personam* jurisdiction over Vesco (73 Civ. 2518); and (2) the service of the summons and complaint on Vesco on April 17, 1974 in the separate action in the Southern District of New York (74 Civ. 1588) at the same Brace Ridge Road residence in Nassau, Bahamas, gave the Court *in personam* jurisdiction over Vesco. With regard to the attempted service of the amended complaint on October 24, 1973, referred to in Vesco's brief on the first of the two appeals, we also approve Judge Stewart's finding that this service did not give the Court *in personam* jurisdiction over Vesco. We do not reach Judge Stewart's ruling that Vesco's motion to vacate the default judgment of October 5, 1973 was not timely made.

As this Vesco controversy will probably reach this Court again from time to time for some years to come, we think it may spare other judges the time and effort we have spent studying the briefs and the twelve large manila folders in the Clerk's Office containing the "proceedings heretofore had herein," and constituting the original record in Appeal 78–7092, if we make a preliminary statement describing the salient features of the prior proceedings and especially the prior opinions filed by various

panels of this Court. This we think is especially important as it will serve to place the matters dispositive of these appeals in their proper relation to what has already been decided and what has not already been decided.

## PART ONE

### *Prior History of the Case.*

For some years prior to 1972 the SEC took note of the conduct of Vesco and his manipulation of corporate entities, spinoffs, the shuffling about of individual officers and directors and the use of foreign banks as depositaries of the alleged hundreds of millions of dollars he is said to have misappropriated from investors in violation of the federal securities laws. The result of the ensuing investigation was that on November 27, 1972 the Commission filed a suit against Vesco, 20 other individuals and 21 corporate entities in which the complaint, based upon a vast array of alleged wrongdoing by Vesco and his associates, prayed for extensive legal and equitable relief. This action in the District Court for the Southern District of New York is entitled *Securities and Exchange Commission v. Robert L. Vesco,* No. 72 Civ. 5001.[1] The complaint in this action alleged "a scheme of extraordinary magnitude, deviousness and ingenuity in violation of the anti-fraud provisions of the Securities and Exchange Act of 1934 * * * masterminded by Vesco." One of the defendants was International Controls Corp., alleged to be a principal vehicle used by Vesco to implement various features of the scheme to defraud investors. On March 16, 1973 ICC

1. *Securities and Exchange Commission v. Robert L. Vesco, Norman LeBlanc, Milton F. Meissner, Ulrich J. Strickler, Stanley Graze, Frank G. Beatty, Richard E. Clay, Wilbert J. Snipes, James Roosevelt, Frederic J. Weymar, Gilbert R. J. Straub, C. Henry Buhl, III, Allan C. Butler, Laurence B. Richardson, John D. Schuyler, Edward Stoltenberg, Howard F. Cerny, George Phillipe, Allan F. Conwill, Raymond W. Merritt, John S. D'Alimonte, IOS Ltd., International Controls Corp., Bahamas Commonwealth Bank, Ltd., Overseas Development Bank Luxembourg S.A., International Bancorp Ltd., Val-* *ue Capital Ltd., Butlers Bank Ltd., Transglobal Financial Services Ltd., Kilmorey Investments Ltd., Global Holdings Ltd., Global Financial Ltd., I.I.T. Management Co., S.A., F.O.F. Management Co., Ltd., Venture Management Co., Ltd., Transglobal Growth Fund Management Co., Ltd., Bank Cantrade, Ltd., Venture Fund (International), N.V., Fund of Funds, Ltd., Transglobal Growth Fund, Ltd., IIT, An International Investment Trust, Consulentia Verwaltungs, A.G.,* No. 72 Civ. 5001 (S.D.N.Y. Filed November 27, 1972).

consented to the entry of final judgment against it in the SEC action, and Judge Stewart, in lieu of the appointment of a receiver sought by the SEC, appointed a Special Counsel and a new interim board of directors to represent ICC.

David M. Butowsky, the Special Counsel appointed by the Court as authorized by the terms of the consent judgment, on June 7, 1973 filed in the District Court for the Southern District of New York the complaint in the action in which we have the first of the two consolidated appeals (78–7092). In this action plaintiff ICC sued 32 individual and corporate defendants, 22 of whom were defendants in the already pending SEC action (72 Civ. 5001) and 10 of whom were not. These new defendants included Vesco & Co., Inc. and various corporations connected in one way or another with a Boeing 707 aircraft purchased for $1,375,000 and refurbished by an expenditure of $600,000 to $700,000 "for the personal comforts, conveniences and zest for living" of Vesco and with the yacht Patricia III, located in Miami, Florida, to be fitted up at great expense to suit Vesco's "Sybaritic tastes." On June 20, 1973, Vesco, Patricia Vesco, his wife, and Vesco's family boarded the yacht, and Vesco and his family remained its sole users until shortly before it was put into Miami for repairs.

The first phase of this case (*International Controls Corp. v. Vesco*, 73 Civ. 2518 (S.D.N.Y.))[2] to reach this Court was an appeal from an order of Judge Stewart granting a preliminary injunction, among other things enjoining the control or disposition of certain assets, including the Boeing 707 and the yacht Patricia III. This is Appeal No. 1. The opinion affirming Judge Stewart's injunction, with a certain modification, was written by Chief Judge Kaufman, for a panel consisting of himself, Judge Mansfield and Judge Mulligan, the latter of whom dissented in part. This Appeal No. 1 was argued on December 10, 1973, decided on January 15, 1974, and it is reported as *International Controls Corp. v. Vesco*, 490 F.2d 1334 (2d Cir.), *cert. denied*, 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974).

The part of that opinion pertinent to these two present consolidated appeals states that Vesco was not one of the appellants but Vesco & Co., Inc. was one of the appellants. The default judgment of October 5, 1973 is mentioned (490 F.2d at page 1350); also that Vesco & Co., Inc. was incorporated by Vesco on July 12, 1972 as an estate planning device, all the voting common stock of which is owned by Patricia Vesco as custodian for Vesco's children, and the officers are Mrs. Vesco and Shirley Bailey, Vesco's personal secretary (490 F.2d at page 1349). Judge Stewart, in the findings upon which the preliminary injunction was based, stated that "Vesco & Co. is a corporate alter ego for defendant Robert Vesco and was created by him during and after the perpetration of the fraud charged in the complaint." This is the finding referred to in Chief Judge Kaufman's opinion (490 F.2d at page 1350). Because of the relevance of this alter ego finding to the disposition of the two appeals now before us, however, we think it proper to state that, at a later date and on August 22, 1975, in connection with a different application in this same action, Judge Stewart repeated this finding. We shall find that an appeal was taken to this Court and the upshot was that the finding was not reversed or modified and that it stands now as the law of this case for all purposes. We shall discuss this particular matter later in some detail.

For our present purposes this opinion in Appeal No. 1 by Chief Judge Kaufman, made as above stated on the appeal from the order of Judge Stewart granting the preliminary injunction, also refers to the fact that Vesco had already absented himself from the territorial limits of the United States, had refused to return and was "safely ensconced in Nassau, the Bahamian capital" (490 F.2d at page 1338). The order to show cause, on which this motion for the preliminary injunction was made, is dated June 8, 1973.

After the affirmance of the order of Judge Stewart granting the preliminary in-

---

2. *See* the title page of this opinion.

junction, Special Counsel for plaintiff proceeded with the utmost diligence to try to reach assets to satisfy the default judgment, which did not provide for the payment of any specific sum as the damages had not yet been proved. This led to extended and time-consuming hearings which resulted in a finding of "specified damages of $2,433,466.72, but left open the possibility that ICC might be able to prove further damages in subsequent proceedings." A second default judgment in this amount was entered against Vesco on July 16, 1974. All this time, quite obviously aware of the allegations in the complaint in this action and of all the proceedings above referred to, Vesco was sitting in the wings leaving it to his alter ego to do the appealing and the presentation·to this Court of the reasons for reversal of some or all of Judge Stewart's rulings. One of these arguments asserted by Vesco & Co., Inc. was that because of the alleged defective service of process the judgment against Vesco was void. And this is precisely the principal question asserted by Vesco in the first of these two consolidated appeals now before us for decision. As he had not directly submitted to the personal jurisdiction of the court, Judge Stewart in the hearings above referred to properly refused to permit Vesco & Co., Inc. to assert or prove defenses personal to Vesco. At this point it is well to remember that the complaint alleges the facts from which the alter ego relationship is to be inferred and Vesco by his default has placed none of the allegations of the complaint in issue.

On May 20, 1975 ICC moved before Judge Stewart for an order of execution to reach the assets of Vesco & Co., Inc. to satisfy the default judgment against Vesco. On August 22, 1975 Judge Stewart ruled that Vesco & Co., Inc. was the alter ego of Vesco and directed both Vesco and Vesco & Co., Inc. to turn over their ICC stock to a receiver. Vesco & Co., Inc. took an appeal from this decision to our Court. The resulting opinion is reported as *International Controls Corp. v. Vesco*, 535 F.2d 742 (2d Cir. 1976), *cert. denied*, 429 U.S. 1088, 97 S.Ct. 1160, 51 L.Ed.2d 574 (1977). This Appeal

No. 2 came on for argument before a different panel consisting of Judges Kaufman, Smith and Anderson. The appeal was argued on March 8, 1976 and decided on May 13, 1976. The Court, in an opinion by Judge Smith, did not decide the merits or any part thereof. Instead, its attention was diverted by counsel for Vesco & Co., Inc. to the interesting questions of finality and compliance with Rule 54(b). Since the judgment appealed from was against Vesco and not the other defendants, it was held that further damages might be proved later; and, as the complaint contained multiple claims, this Court stated that it could not discern with the clarity required by the final judgment rule just how much of the judgment was final and how much was not. The Court was also unsure as to whether the single Rule 54(b) certification was intended to apply not only to the first default judgment but also to the second. Accordingly, on May 13, 1976, the case was remanded to Judge Stewart. While the opinion makes no reference to Vesco, the fact is that extradition to face the three indictments described in footnote 1 to Chief Judge Kaufman's opinion on Appeal No. 1 had been refused and Vesco was still at large and eluding process servers as will more fully appear later in this opinion.

However disheartening the further delay caused by this remand might have seemed to Special Counsel for appellee, he took immediate steps to remedy the procedural defects that had been brought to the attention of the Court by counsel for Vesco & Co., Inc. So, upon proper notice to Vesco & Co., Inc. and to Vesco by order to show cause dated May 21, 1976, and on May 27, 1976, despite urgent and prolonged arguments on behalf of Vesco & Co., Inc. for further hearings and further delay, Judge Stewart prepared and signed a new and amended judgment entered May 27, 1976, in which the part of the claims asserted in the complaint that was covered by the judgment and the part of the claims asserted in the complaint that was not covered by the judgment were made unmistakably clear. He also certified, in compliance with the

requirements of Rule 54(b), that as to the amended judgment thus defined "there is no just reason for delay in entering a final judgment."

This led to a fantastic series of events and a new spate of procedural smoke screens by Vesco & Co., Inc. which, whether so intended or not, resulted in further delays in bringing Vesco to justice.

Vesco & Co., Inc. appealed to this Court from the amended judgment, entered on May 27, 1976 on the remand. But this notice of appeal was served on July 7, 1976, nine days too late. The flimsy excuses for this "mistake" are exposed in Judge Stewart's opinion of October 27, 1976. On August 4, 1976 appellee moved in this Court to dismiss the appeal; on August 31 Vesco & Co., Inc. moved in the District Court, pursuant to Rule 4(a) of the Federal Rules of Appellate Procedure for an extension of time within which to file a notice of appeal, which was denied. On September 14, 1976 this Court heard appellee's motion to dismiss and a cross-motion by Vesco & Co., Inc. for reconsideration of the remand. On the same day, by order of Judges Anderson, Mansfield and Mulligan, the motion for reconsideration was denied and the motion to dismiss was granted "for lack of jurisdiction."

■ Accordingly, as no effective appeal was taken by Vesco & Co., Inc. from the order of Judge Stewart holding that Vesco & Co., Inc. was the alter ego of Vesco, that ruling is now the law of this case. Moreover, it is the key to reaching the assets of Vesco, who for all these years has by one means or another frustrated every attempt to bring him back to the United States and cause him to disgorge the avails of his misconduct, including the huge sums said to be deposited in secret accounts in banks in Switzerland, Liechtenstein and elsewhere.

In any event, as of September 14, 1976 it appeared that Special Counsel for appellee might then be able to get at Vesco's assets in Vesco & Co., Inc. But Vesco merely shifted lawyers and tried something entirely new. This was a motion in the District Court to vacate the May 27, 1976 judgment pursuant to Rule 60(b) of the F.R.C.P.

The main thrust of the motion was for the first time to bring before the Court the fact that the judgment of October 5, 1973 was plainly based on the original complaint and, so the argument of Vesco & Co., Inc. went, the mere filing of an amended complaint on September 7, 1973, before the entry of the default judgment of October 5, 1973, superseded the original complaint and made the default judgment void [Rule 60(b)(4)]. Judge Stewart's reason for denying this motion on October 27, 1976 was that the mere filing of an amended complaint does not supersede the original complaint, and that until proper service of an amended complaint has been made pursuant to Rule 5(a) the original complaint remains in full force and effect. He further held that the only attempted service of the amended complaint on Vesco was at his Brace Ridge Road residence in Nassau, Bahamas, on October 24, 1973, and that this service was invalid and ineffective because not made in compliance with his order authorizing the service. Accordingly, as this service gave the Court no *in personam* jurisdiction over Vesco, the amended complaint did not supersede the original complaint and the motion under F.R.C.P. Rule 60(b)(4) to vacate the default judgment of October 5, 1973 against Vesco was denied on October 27, 1976. Thus, in connection with the first of the two consolidated appeals, and to be sure that we leave no loose ends, we feel that we should discuss in a later part of this opinion the details concerning this attempted service and our reasons for approving Judge Stewart's ruling that the service was improperly made and ineffective to give the Court *in personam* jurisdiction over Vesco.

This brings us to the third time this case has come before our Court. Appeal No. 3 by Vesco & Co., Inc. was from Judge Stewart's order of October 27, 1976. On June 3, 1977 the order was affirmed, in an opinion by Judge Oakes, in which Judge Wyzanski, Senior Judge of the District Court for the District of Massachusetts, sitting by designation, and Judge Holden, Chief Judge of the District Court for the District of Ver-

mont, also sitting by designation, concurred. The case is reported as *International Controls Corp. v. Vesco,* 556 F.2d 665 (2d Cir. 1977), *cert. denied,* 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 758 (1978).

In the opening paragraph of the opinion Judge Oakes commented (556 F.2d at page 667):

> While those transactions are not before us in the instant appeal, it was Mr. Vesco's "multifarious manipulations" that led him to absent himself from this country and to be unavailable for service of process. This persistent refusal to appear in any American court is the single most important contributing cause to the procedural problems that have culminated in this appeal * * *.

█ To return to the procedural claim then asserted by Vesco, counsel had a serious problem. This problem, as will appear more clearly when we come to discuss the merits in connection with our disposition of the first of the two consolidated appeals, was that a holding that the service of the amended complaint on Vesco on October 24, 1973 was *valid* would be inconsistent with and greatly weaken the argument now pressed upon us by Vesco that the service of the original complaint on him on July 30, 1973 was *not valid.* So, true to form, counsel for Vesco & Co., Inc. on Appeal No. 3 so presented his argument for reversal as to concentrate on the claim that the mere filing of the amended complaint on September 7, 1973 superseded the original complaint so there was no basis on which the default judgment could rest and it must, therefore, be vacated. And the way Judge Stewart's ruling that the service on Vesco of the amended complaint on October 24, 1973 was *invalid* was pushed into the background was by the simple expedient of making no attack, on Appeal No. 3, on this ruling. This turns out to be just another of Vesco's maneuvers as he now, in the first of the appeals before us (Vesco's Main Brief, in 78–7092, at pp. 19ff), challenges as erroneous Judge Stewart's finding that the October 24, 1973 service was *invalid,* whereas in Appeal No. 3 this finding was not challenged by Vesco & Co., Inc.

It is interesting to note that the failure to challenge the finding of invalidity of service on Vesco on Appeal No. 3 did not escape the vigilance of Judge Oakes, who commented at 556 F.2d at page 668: "The District Court found that the amended complaint was not properly served on Vesco, a finding not challenged by appellant here."

The net result was that the finding of invalidity of the service of the amended complaint on Vesco on October 24, 1973 was affirmed. By failing to challenge this finding the Court was given the impression that the ruling was correct. This deliberate and purposeful act of Vesco & Co., Inc., the alter ego of Vesco, estops Vesco from claiming, on the first of the two consolidated appeals now before us, that the ruling of Judge Stewart was erroneous. This is especially true in view of all that has occurred in the interval between the failure to challenge the finding on Appeal No. 3 from Judge Stewart's order of October 27, 1976 and the assertion that the finding was erroneous now made in Vesco's main brief herein on September 1, 1978. Moreover, as stated *infra* at p. 180, we are of the opinion that Judge Stewart's ruling that the service on Vesco on October 24, 1973 was invalid is correct because the service was not made in accordance with the terms of Judge Stewart's order authorizing the service of the amended complaint.

There is another aspect of the opinion of Judge Oakes on Appeal No. 3 that might lead to some misunderstanding. As urged on by counsel for Vesco & Co., Inc., Judge Oakes commented with reference to the disposition by this Court of Appeal No. 2, 556 F.2d at page 667: "The court did not reach the question of the validity of the alter ego ruling." This is literally true. But the reason it is true is that this Court remanded the case as we have previously stated, and this was done without reaching *any* of the questions raised by appellant Vesco & Co., Inc. As a matter of fact and law this alter ego ruling was a repetition of the ruling made on Appeal No. 1 as stated in Chief Judge Kaufman's opinion above

referred to; and the second ruling to the same effect by Judge Stewart became final, as above stated, when counsel for Vesco & Co., Inc. filed its notice of appeal from the order as amended on the remand nine days too late and the appeal was dismissed.

After all this litigation over a period of five years one might surmise that the Special Counsel was at last in a position to close in on some of Vesco's assets. Nothing could be further from the fact. During this period of five years and despite the utmost diligence of the Special Counsel, the courts, and especially this Court, have been busy wrestling with Vesco's procedural maneuvers. Except for the alter ego finding in Chief Judge Kaufman's opinion on Appeal No. 1, and repeated from time to time as we have said, progress has been delayed and obstructed by Vesco's procedural maneuvers. Nevertheless, it now appears that, during all these years, Vesco has had a card up his sleeve and that is his claim that the service of the summons and complaint upon him at his Brace Ridge Road residence in Nassau, Bahamas on July 30, 1973 was not good service. He had "talked" about this off and on, and Vesco & Co., Inc. had mentioned this claim in one way or another on some of its various appeals, but the question had never been squarely decided.

And so, on July 29, 1977 Vesco at last moved to vacate the default judgment rendered against him on October 5, 1973, pursuant to Rule 60(b)(4) on the ground that the judgment was void because the service, made almost to the day five full years before, was not properly made and the court had no *in personam* jurisdiction of Vesco. This is the subject of the first appeal before us now.

3. Vesco claims that the appointment of an associate of plaintiff's law firm was improper, citing a 1939 opinion by District Judge Hulbert in *In re Evanishyn*, 1 F.R.D. 202 (S.D.N.Y. 1939). We think *Evanishyn* was wrongly decided and we refuse to follow it. The Advisory Committee's Note of 1963 to Rule 4(i) states that allowing "any person who is not a party" to effect service authorized by a court order "increases the possibility that the plaintiff will be able to find a process server who can proceed unimpeded in the foreign country * * ." Service by Bahamian counsel proved absolutely

The situation is incongruous, to say the least. Here we have a man who has "masterminded" the whole alleged scheme to defraud investors, who is familiar with every phase of the prolonged effort to defeat justice by absenting himself from the territorial limits of the United States, by avoiding extradition, by evading process servers and by engineering various appeals to this Court, all with full knowledge of the contents of the complaint which charges him as the principal defrauder, and he comes before the Court and asserts the claim that the service was invalid because he was not given fair notice of the charge. Thus there is much to be said in support of Judge Stewart's finding that the motion, under all the circumstances, was untimely made. Nevertheless, we have decided not to reach that point but rather to decide on the merits whether or not the service was valid.

## PART TWO

*The Service by Miss Yohonn at Vesco's Brace Ridge Road Residence in Nassau on July 30, 1973 Was Good and Effective Service and Gave the Court In Personam Jurisdiction Over Vesco.*

*A.*

*Discussion of Law Authorizing Judge Stewart's Orders of July 27, 1973 and July 29, 1973.*

The service of the summons and complaint on July 30, 1973, was pursuant to the terms of an order by Judge Stewart on July 29, 1973 authorizing Lois S. Yohonn, a lawyer employed in the office of plaintiff's attorneys of record in New York,[3] to depos-

futile in this case, and no doubt the same would have been true if the aid of a local official had been solicited. The person selected had the requisite information at her disposal as to both Vesco's whereabouts and the ancillary order for service and was knowledgeable about the business of serving process. We believe that so long as the court does not appoint the actual party to effect service under Rule 4(i)(1)(E), the selection of the person believed to be in the best position to effect service of process is a matter of discretion. Certainly there was no abuse of discretion by Judge Stewart here.

it "a copy of the summons and complaint upon the premises of the last known residence of said defendant located in Nassau, Bahamas, and mailing a copy of the summons and complaint to said defendant at the address of such last known residence in Nassau, Bahamas."[4] The reason for the order, and another order to which we shall refer later, was that from the SEC proceedings mentioned in the preliminary part of this opinion Vesco was known to be not averse to evading the service of process. Thus actual delivery of the summons and complaint to Vesco in person was not required. As will later appear, two bodyguards stationed at Vesco's residence made any delivery of process to Vesco in person impossible. We shall devote this part of the opinion to a brief discussion of the provisions of law that make it proper for Judge Stewart to have made this order of July 29, 1973.

■ As we are dealing here with service of process in a foreign country, we must, in our consideration of the matter, start with F.R.C.P. Rule 4(f) "Territorial Limits of Effective Service." This subdivision provides *inter alia* for service "when authorized by a statute of the United States." This statute is Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, which is the same statute on which the subject matter jurisdiction[5] of the District Court in this case is based. But, while Section 27 authorizes service "wherever the defendant may be found," it does not explicitly authorize service outside the territorial limits of the United States. This gap was bridged by this Court in an opinion by Judge Friendly in *Leasco Data Processing Equipment Corp. v. Maxwell,* 468 F.2d 1326 (2d Cir. 1972), interpreting Section 27 as authorizing international service of process.[6]

■ The next step in our reasoning, leading up to Judge Stewart's orders authorizing service, is F.R.C.P. Rule 4(e), which provides with reference to extraterritorial service that service may be made in the manner authorized by the statute (i. e. Section 27), or, "if there is no provision therein

4. Vesco claims that registered mail with a return receipt requested was required. We disagree. The views expressed by Judge Weinfeld in an analogous case, *Levin v. Ruby Trading Corp.,* 248 F.Supp. 537 (S.D.N.Y.1965), are applicable. Where, as here, mailing is coupled with leaving the summons and complaint at a place where the defendant is reasonably likely to learn of their contents, and where the defendant has a long history of avoiding process servers, due process is accorded without the use of a return receipt.

5. The complaint here alleged complex schemes involving multiple corporate manipulations in violation of Section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5. Our Court resolved the question of subject matter jurisdiction in Appeal No. 1, *International Controls Corporation v. Vesco,* 490 F.2d 1334, 1342–1346, 1350–1351 (2d Cir.), *cert. denied,* 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974).

Vesco further argues that the District Court lacked subject matter jurisdiction because the partial inquests held pursuant to the default judgment focused on damages related to common law claims rather than solely to claims arising under the Securities Laws. *Appellant's Brief,* at pp. 23–27. This is, in reality, a restatement of the argument made by Vesco & Co., Inc., in Appeal No. 1, namely that the facts pleaded in the complaint state claims, if at all,

arising under state law and not the Securities Laws. Chief Judge Kaufman met this argument in his opinion for our Court in Appeal No. 1 at the pages noted above.

Assuming that the partial inquests referred in part to damages arising under state law claims, principles of pendent jurisdiction allowed the District Court to consider these damages once a claim arising under Section 27 was established. Recent authority holds this to be the case even where, as here, extraterritorial service has been made pursuant to a federal statute. *Oetiker v. Jurid Werke, G.m.b.H.,* 181 U.S.App.D.C. 124, 556 F.2d 1 (1977); *Robinson v. Penn Central Co.,* 484 F.2d 553 (3rd Cir. 1973); *Travis v. Anthes Imperial Ltd.,* 473 F.2d 515 (8th Cir. 1973); *Schwartz v. Eaton,* 264 F.2d 195 (2d Cir. 1959) (Dictum); Mills, *Pendent Jurisdiction and Extraterritorial Service Under the Federal Securities Laws,* 70 Colum. L.Rev. 423 (1970); Note, 63 Colum.L.Rev. 762 (1963); Note, 73 Harv.L.Rev. 1164 (1960). *See also* 2 *Moore's Federal Practice* ¶ 4.42[1], at 4–524 n.47 (1978); 4 Wright & Miller, *Federal Practice and Procedure,* § 1125, at 527 (1969). We believe these authorities better reasoned than earlier cases, collected in *Moore's Federal Practice* and *Wright & Miller,* holding to the contrary.

6. *See also* 2 *Moore's Federal Practice* ¶ 4.42[1], at 4–521, ¶ 4.45, at 4–563, and cases cited.

prescribing the manner of service," then service is to be made "in a manner stated in this rule." As Section 27 does not, with reference to extraterritorial service, prescribe "the manner of service," this brings us to the "manner stated in" other relevant parts of F.R.C.P. Rule 4. Thus, in addition to the standard methods of service set out in Rule 4(d), we find that Rule 4(i) "Alternative Provisions for Service in a Foreign Country" comes into play. Rule 4(i) authorizes the use of five alternative forms of substitute service which provide the plaintiff and the court with the flexibility required to effect service on a defendant in a foreign country.[7] Subparagraph (E) of Rule 4(i)(1) provides for service "as directed by order of the court," and in this section we find the specific authority on which Judge Stewart relied when he signed the orders authorizing service on Vesco.

Rule 4(i)(1)(E) permits the district court "by order to tailor the manner of service to fit the necessities of a particular case."[8] The district court is not limited to those methods of service set out in Rules 4(d) and 4(i)(1)(A) through (D), but is authorized to fashion a method of service, under Subparagraph (E), to satisfy the requirements of the case at hand and of the Due Process Clause. The Supreme Court has long recognized that no one form of substitute service is favored over any other so long as the method chosen is reasonably calculated, under the circumstances of the particular case, to give the defendant actual notice of the pendency of the lawsuit and an opportunity to present his defense.[9] The constitutional

determination is derived from the necessities of each case rather than from a preconceived notion of what will provide actual notice in every case.

Thus we think Judge Stewart's order of July 29, 1973 was clearly authorized by law. That it was designed to give proper notice to Vesco and to comply with the requirements of due process are the only inferences compatible with the circumstances of this particular case that can be made from the recital of what occurred in Nassau in the months of June and July, 1973, and especially the service first attempted by Miss Yohonn on July 30, 1973, and the service later consummated by her on that same day, to which we shall now turn.

### B.

### The Service of the Summons and Complaint on Vesco, July 30, 1973.

■ International Controls Corporation filed its complaint in this action against Vesco and other defendants on June 7, 1973. Service was first attempted on Vesco by Bahamian counsel, authorized by an order of Judge Stewart dated June 15, 1973.[10] For unstated reasons Bahamian counsel was not able to effect service. Thus, in July 1973, counsel for ICC applied to Judge Stewart for an order permitting Lois S. Yohonn, one of his associates, to serve Vesco in Nassau, Bahamas. On July 27, 1973 Judge Stewart signed an order granting this request without detailing the method by which service was to be made.[11] ICC

---

7. *Advisory Committee's Note of 1963 to Rule 4(i).* *See also United States v. Danenza,* 528 F.2d 390 (2d Cir. 1975); *Levin v. Ruby Trading Corp.,* 248 F.Supp. 537 (S.D.N.Y.1965); 2 *Moore's Federal Practice* ¶ 4.45, at 4–566; 4 *Wright & Miller* § 1133, at 558–559; Kaplan, *Amendments of the Federal Rules of Civil Procedure, 1961–1963(I),* 77 Harv.L.Rev. 601, 636 (1964).

8. *Advisory Committee's Note of 1963 to Rule 4(i)(1)(E).* *See also* 4 *Wright & Miller* § 1134, at 564–565.

9. *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Walker v. City of*

*Hutchinson,* 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *Milliken v. Meyer,* 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940).

10. *See* the District Court Docket Entry for June 15, 1973, appearing at page iv of the Appendix of Defendant-Appellant Robert L. Vesco. This was referred to in the Affidavit of Leonard C. Gordon, sworn to on July 27, 1973, submitted in support of his request that Miss Yohonn be appointed to serve Vesco in the Bahamas.

11. The order of July 27, 1973 stated in part: " * * * it appearing that Lois S. Yohonn is a qualified person over twenty-one years of

anticipated further difficulty in serving Vesco and therefore prepared at this time an ancillary order which Judge Stewart ultimately signed on July 29, 1973, permitting service by leaving the summons and complaint at Vesco's last known residence in the Bahamas and then mailing a copy of the papers to that address.[12]

Miss Yohonn proceeded to Nassau on Saturday, July 28, 1973. Contrary to Vesco's claim that she never attempted personal service, she spent the afternoon and evening of Sunday, July 29, and most of Monday, July 30, searching for Vesco at various locations in Nassau and Paradise Island. Unsuccessful in these efforts, Miss Yohonn drove herself to the Brace Ridge Road residence. There she found a bolted gate and two men who appeared to be bodyguards. One of them inquired as to her business. She asked if this was Vesco's residence. After some evasion one of the two men said it was his residence. Miss Yohonn represented that she was a friend of Vesco's and wished to speak with him. One of the guards left to go into the house and said he would make inquiry.

While the one guard was in the house two events of particular importance occurred. A car drove up to the gate and was admitted. Inside, according to Miss Yohonn on information and belief, were Mrs. Vesco and two children. Later, a boy of approximately 16 years came out of the house and, approaching the gate, stated to Miss Yohonn, "My father said to ask what you want." Miss Yohonn responded that she wished to serve a summons and complaint and threw the papers at the boy. The boy threw them back and returned into the house.

In the meantime the first guard had returned. When Miss Yohonn attempted to serve one of the guards, the response was: "You get out of here. We don't want no papers on this property. Don't you put anything on this property." They then threw the papers onto the road.

Miss Yohonn ran back to her car, afraid of the guards, and drove to her hotel. There she telephoned Judge Stewart, who authorized her to effect service according to the terms of the ancillary order signed on the previous day.[13]

Miss Yohonn hired a taxi for the second trip to Vesco's residence. There she threw a copy of the summons and complaint folded and tied with a blue ribbon over the fence and photographed the papers as they remained on the lawn in front of the house. The two guards immediately ran out to the gate, one armed with a stick and the other with a piece of pipe. One pulled open the door of the car and demanded that Miss Yohonn come out. The cab driver remonstrated with the guards and told them they could do nothing to Miss Yohonn while she was in his cab. When she told the guard that he had no right to touch the cab, he replied that she had no right to put anything on the property. Then the driver began to drive away.

---

age and is not a party to this action, and that speed is essential in the service of the summons and complaint and that there will therefore be a saving in fees if service is made by said person, it is hereby

"Ordered, that Lois S. Yohonn be and she hereby is authorized to effect service of process in the within action on defendant Robert L. Vesco."

12. The order of July 29, 1973 duplicated the order set out above, adding the following:

" * * *, and it is further

"Ordered that, service of process upon said defendant Robert L. Vesco may be effected by depositing a copy of the summons and complaint herein upon the premises of the last known residence of said defendant locat-

ed in Nassau, Bahamas, and mailing a copy of the summons and complaint herein to said defendant at the address of such last known residence in Nassau, Bahamas."

13. It is interesting to note that, while counsel for Vesco made a showing of skepticism at oral argument with respect to the signing of the second order and Miss Yohonn's telephone communication with Judge Stewart, during oral argument before Judge Stewart on December 20, 1977 Vesco's present counsel authorized a change on the face of Vesco's undated affidavit acknowledging that Miss Yohonn telephoned Judge Stewart's chambers in the afternoon or early evening of July 30, 1973, rather than in the morning of that day, to ask permission to use the alternative method of service.

After they had driven a short distance the driver informed Miss Yohonn that the guards were following them in a car. Fearing for her safety, Miss Yohonn directed the driver to proceed to a different hotel that was connected with her hotel by a series of corridors. She asked that the driver keep secret her whereabouts and returned to her hotel by a circuitous route, where she put the film in a safe deposit box. She arrived at her room at approximately 7:00 P.M. and remained there for some time during which the phone rang on several occasions, each time with no one on the other end. Miss Yohonn returned to New York on the following day, July 31, 1973.

On August 1, 1973 Miss Yohonn mailed a copy of the summons and complaint to Vesco at his Brace Ridge Road residence by ordinary first-class mail.

We think it quite clear and we hold and decide that the service of the summons and complaint at the Brace Ridge Road residence on July 30, 1973 was reasonably calculated to give Vesco actual notice of the lawsuit. Indeed, there is substantial and persuasive circumstantial proof that, during the entire episode, Vesco himself was physically present in the house and witnessed the entire affair. The very presence of the bodyguards indicates this. And the boy's statement, "My father said to ask what you want," is most significant, and there is more.

Vesco's motion papers, on the motion to vacate the default judgment of October 5, 1973, were served on July 29, 1977. One of the mysterious and singular features of this remarkable case is an undated "affidavit" by Vesco filed in support of the motion on November 17, 1977. This "affidavit" contains 9 pages of rambling and disconnected statements having little relevance to what occurred at the Brace Ridge Road residence on July 30, 1973. He does not deny that the 16 year old boy was his son; he does not deny that the woman and children who drove up in the car were his wife and family; he does not deny that he asked anyone to inquire of Miss Yohonn what she wanted; and, most important of all, he does

not deny that he was right there in the house all the time. He does not even deny that he hired the bodyguards to ward off process servers.

When inquiry was made of his lawyer on the oral argument of the appeals, he gave no explanation and did not answer. Instead, he asserted Vesco's attorney-client privilege.

## C.

### The International Convention on Service of Process Is Not Applicable Here as the Bahamas Never Agreed to It.

■ A new point not raised by Vesco when the matter was before Judge Stewart is that the service as made on Vesco on July 30, 1973 was not in accordance with the requirements of a treaty entered into by the United States in 1969 and described as the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, done at The Hague, November 15, 1965, [1969] 20 U.S.T. 361, T.I.A.S. No. 6638, 658 U.N.T.S. 163 (Entered into force February 10, 1969). One difficulty with this argument is that the treaty cannot have any application to this case unless the Bahamas agreed to it, and the fact appears to be that it did not.

It is undisputed that the Bahamas has never become a direct signatory to the Convention. This leaves the question of whether it ever became a party through the United Kingdom, which was empowered by Article 29 of the Convention to declare, at the time of its signature or at any time thereafter, that the Convention should "extend to all the territories for the international relations of which it is responsible, or to one or more of them."

Vesco's brief quotes a letter from the Prime Minister of the Bahamas that merely indicates that the Bahamas became an independent state on July 10, 1973 and that many treaty rights and obligations of the Government of the United Kingdom in respect to the Bahamas were succeeded to by the Commonwealth of the Bahamas and others were not. 1978 T.I.F. 10. In letters

dated May 14 and May 15, 1970, the British Ambassador to The Hague informed the Ministry of Foreign Affairs of the Netherlands of the intention of the United Kingdom to extend the Convention to various territories effective July 19, 1970. The Bahamas was not included among these territories.[14] Thus it appears that the United Kingdom never extended the Convention to the Bahamas.

On the oral argument, counsel for Vesco was presented with the 1978 list of Treaties in Force, issued annually by the Office of the Legal Adviser, Department of State, which states that the treaty was extended [15] through Great Britain to the following:

> Antigua, Belize, Bermuda, British Virgin Islands, Cayman Islands, Central and Southern Line Islands, Falkland Islands and dependencies, Gilbert Islands, Gibraltar, Guernsey, Hong Kong, Isle of Man, Jersey, Montserrat, Pitcairn, St. Helena and dependencies, St. Lucia, St. Vincent, Solomon Islands, Turks and Caicos Islands, and Tuvalu.

When faced on the oral argument with the advice that the United Kingdom had not extended the Convention to the Bahamas and that the Bahamas has not succeeded to the Convention since its independence, and when asked if he had anything to show to the contrary, counsel for Vesco replied: "No, Sir."

 Moreover, there is much to be said in support of the view that, even if the terms of the Convention were applicable, the Convention was not intended to abro-

---

**14.** *See* Letter from the Netherlands Ambassador to the United States to Secretary of State William Rogers (July 2, 1970). This letter referred to the letters of May 14 and 15, 1970 by which the United Kingdom extended the Convention to numerous territories. The letter of May 14 extended the Convention to Hong Kong. The letter of May 15 extended the Convention to Antigua, Bermuda, British Honduras, British Virgin Islands, British Solomon Islands Protectorate, Cayman Islands, Central and Southern Line Islands, Falkland Islands and dependencies, Fiji Islands, Gibraltar, Gilbert and Ellice Islands Colony, Guernsey, Jersey, Isle of Man, Montserrat, Pitcairn, St. Helena and dependencies, St. Lucia, St. Vincent, Seychelles, Turks and Caicos Islands.

**15.** The discrepancy between the territories listed in the letters of May 14 and 15, 1970 and those listed in 1978 Treaties in Force results from the manner in which Treaties in Force is compiled. The letters represent an accurate list of the territories to which the United Kingdom in fact extended the Convention. Treaties in Force sets forth a list of countries and territories to which the Convention actually applies, current through to the date of publication.

While Treaties in Force states that the United Kingdom "extended" the Convention to the territories listed in the text, that list is not inclusive since the compilers have deleted references to territories which have become independent since the time the Convention was extended to them and which have not succeeded to the Convention. For example, Fiji and the Seychelles Islands were referred to in the letter of May 15, 1970 but are not included in Treaties in Force. Fiji became independent on October 10, 1970; the Seychelles Islands became independent on June 28, 1976. Neither Fiji nor the Seychelles Islands have succeeded to the Convention, and thus the Convention is not in effect there. Nevertheless, the Convention did apply there prior to their independence.

Furthermore, Treaties in Force does not indicate instances where British colonies have changed their names. For example, the British Honduras changed its name to Belize on June 1, 1973. Belize has remained a British Colony, and thus the Convention is currently in effect there. This explains why only the British Honduras is mentioned in the letter of May 15, 1970 and why only Belize is mentioned in Treaties in Force.

The case of the Gilbert and Ellice Islands Colony involves both changes of names and subsequent independence. On October 1, 1975 the Ellice Islands separated from the Colony and changed their name to Tuvalu. The remaining islands of the Colony were renamed the Gilbert Islands. Both Tuvalu and the Gilbert Islands remained British colonies, and thus the Convention remained in effect there. This is why the Colony is mentioned in the May 15 letter and why Tuvalu and the Gilbert Islands are mentioned in Treaties in Force. Tuvalu became independent on October 1, 1978 and has not as yet succeeded to the Convention. The Convention is not currently in effect in Tuvalu, and, absent subsequent succession, this fact will be reflected in 1979 Treaties in Force by deleting the reference to Tuvalu.

Finally, the Solomon Islands became independent on July 7, 1978 and have not since succeeded to the Convention. This fact will also be reflected by deleting reference to this country in the 1979 edition of Treaties in Force, absent subsequent succession to the Convention.

gate the methods of service prescribed by F.R.C.P. Rule 4.[16]

## PART THREE

*We Approve Judge Stewart's Finding that Service of the Amended Complaint on Vesco at the Brace Ridge Road Residence on October 24, 1973 by Joseph A. Bondi, et al. was Invalid and Ineffective.*

On Appeal No. 3, by Vesco & Co., Inc., before the panel of this Court consisting of Judges Oakes, Wyzanski and Holden, Judge Stewart's order making this finding of invalidity was affirmed, as above stated. But because Vesco & Co., Inc. did not challenge the finding then but Vesco now does challenge it in 78–7092, the first of the two consolidated appeals now before us, we think it proper to dispose of the matter so as not to leave any loose ends that might be resorted to in the future by either Vesco or Vesco & Co., Inc. for purposes of further delay.

Judge Stewart set this service of the amended complaint aside because it was not made in compliance with his order authorizing Messrs. Bondi and others to make the service. He was not deciding any question of due process or constitutional law but was merely interpreting the terms of his own order. The order pursuant to which Miss Yohonn made service on July 30, 1973 merely required that a copy of the summons and complaint be "deposited" on the premises of the residence at Brace Ridge Road. And this was after the throwing back of the papers in the first attempted service, and after Miss Yohonn had telephoned Judge Stewart for permission to proceed again, this time under the order of July 29, 1973, which merely required that the papers be "deposited" on the premises. She did deposit the papers on the premises and she took a photograph of them lying on the lawn, identified by the blue ribbon.

In the case of the amended complaint the order required that Mr. Bondi or one of his alternates "leave" [17] the summons and complaint at the Brace Ridge Road residence and this was not done. Bondi had thrown the papers over the gate and on to the driveway. One of the gardeners picked them up and handed them to a security guard, who had been summoned from the Bahamas Commonwealth Bank, and the security guard threw them into Bondi's car.

So Bondi drove away with the summons and complaint in his car. Obviously, the summons and complaint had not been "left" at Vesco's residence. Thus there is no inconsistency whatever between Judge Stewart's ruling that the service of the original summons and complaint on Vesco on July 30, 1973 was *valid* and his ruling that the

---

**16.** The Treaties Affairs Office of the Department of Justice has compiled a lengthy work entitled *International Judicial Assistance* (Department of Justice, September 1976). This document discusses service of American documents in foreign countries as well as other issues of importance involved in international litigation. *See also* Memorandum to United States Marshals Concerning Instructions for Serving Foreign Judicial Documents in the United States and for Processing Requests by Litigants in This Country for Service of American Judicial Documents Abroad (Department of Justice Memo No. 386, Revision 2, June 15, 1977).

**17.** The order stated in relevant part:
"* * * it appearing that Joseph A. Bondi, David M. Butowsky and Daniel L. Carroll are qualified persons over twenty-one years of age and are not parties to this action, and that there are difficulties entailed in the service of the summons and complaint and that it is expedient that service be made by any of said persons, it is hereby

"Ordered, that [the above stated individuals] * * * be and each hereby is authorized to effect service in the within action on defendants Robert L. Vesco, * * *, and it is further

"Ordered, that service of process upon any of said defendants may be (i) by any method of service of process authorized by Rule 4 of the Federal Rules of Civil Procedure; or (ii) as to individual defendants, by leaving a copy of the summons and amended complaint herein upon the premises of such defendant's last known residence located in Nassau, Bahamas and mailing a copy thereof to such defendant at either the Post Office Box of such defendant or to the address of such last known residence of such defendant in Nassau, Bahamas; or (iii) as to corporate defendants * * *."

service of the amended complaint on Vesco on October 24, 1973 was *not valid*. We must and do assume that Judge Stewart had good and sufficient reasons for the different wording of his various orders authorizing service pursuant to F.R.C.P. Rule 4(i)(1)(E).

## PART FOUR

*In the Second of These Two Consolidated Appeals (78–7279) We Affirm Judge Stewart's Finding That Effective Service Was Made on Vesco at the Brace Ridge Road Residence in Nassau on April 17, 1974 and His Denial of Vesco's Motion to Vacate the Default Judgment Based on Such Service and Entered on September 11, 1974.*

We have postponed discussion of the questions raised on Vesco's second of the two consolidated appeals to avoid unnecessary repetition of much that is stated in the foregoing parts of this opinion. This Appeal 78–7279 is from an order of Judge Stewart, in an action entirely different from the one we have been discussing. This order denies a motion by Vesco to vacate a default judgment entered against him on September 11, 1974 but based on service made at the same Brace Ridge Road residence of Vesco that has been the subject matter of our discussion in Part Two of this opinion. Because some of the same or very similar questions were involved we consolidated the two appeals.

The complaint in this case was filed on April 8, 1974 and alleged fraud with regard to the purchase and sale of shares of the Empire Financial Corporation, in violation of Section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b) and Rule 10b–5, 17 C.F.R. § 240.10b–5, as well as related State law claims. When ICC was unable to purchase the shares for its own account, Vesco interceded and purchased the shares, agreeing to hold them for resale to ICC. Later Vesco agreed to account to ICC for any profits he received on the sale should ICC decide not to exercise its option. ICC never exercised this option, and when Vesco ultimately sold the shares he and his associates realized a total profit of $2,900,000. No prior arrangement had been made to share these monies with ICC. ICC obtained a default judgment against Vesco in the amount of $2,900,000.[18]

Service in this case was carried out pursuant to a court order entered on April 7, 1974 under Rule 4(i)(1)(E) of the Federal Rules of Civil Procedure. The order authorized David M. Butowsky, Special Counsel to ICC, to serve Vesco in Nassau by any method provided by Rule 4, or by "leaving" a copy of the summons and complaint at Vesco's last known residence in Nassau and by mailing the papers to Vesco at his address or Post Office Box.[19] On April 16, 1974, Butowsky went to Nassau, and, on

**18.** We pause to address the question of subject matter jurisdiction, though this was not briefed by the parties. *Clarkson Co., Ltd. v. Shaheen,* 544 F.2d 624 (2d Cir. 1976). Only actual purchasers and sellers may bring suit under Section 10(b). *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *International Controls Corp. v. Vesco,* 490 F.2d 1334 (2d Cir.), *cert. denied,* 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974); *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461 (2d Cir.), *cert. denied,* 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). The definitional provisions of the 1934 Act extend the meanings of "purchase" and "sale" to "any contract" to buy or sell or otherwise acquire or dispose of securities. Sections 3(a)(13)–(14) of the 1934 Act, 15 U.S.C. §§ 78c(a)(13)–(14). The majority in *Blue Chip Stamps* stated that "the holders of puts, calls, options, and other contractual rights or duties to purchase or sell securities"

come within these definitions. 421 U.S. at 751, 95 S.Ct. at 1932. We feel that the complaint sufficiently pleads fraud pertaining to a contract or option to purchase Empire shares to give ICC standing to sue under the Securities Laws. *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

**19.** This order stated in relevant part:
"* * * it appearing that David M. Butowsky is a qualified person over twenty-one years of age and not a party to this action, and that there are difficulties entailed in the service of the summons and complaint and that it is expedient that service be made by said person, it is hereby
"Ordered, that David M. Butowsky, be and hereby is, authorized to effect service of

Wednesday, April 17, he and the United States Consul proceeded to Vesco's Brace Ridge Road residence. There they were met by two guards who prevented them from entering the premises. When Butowsky held out an envelope containing the summons and complaint and identified himself and his intention, one of the guards responded, "We are instructed not to accept any papers." Butowsky then dropped the envelope in front of the guards, who remained mute, and asked them to deliver it to Vesco. After this Butowksy left Vesco's residence and, later that day, mailed an additional copy of the summons and complaint to Vesco at his Post Office Box in Nassau by registered mail.

Butowsky based his belief that the Brace Ridge Road home had remained Vesco's residence in Nassau on his attempted service of the amended complaint in the first of these appeals, his renewed inquiries during this trip to Nassau, and the statement of various residents of Nassau as well as of a former Vesco employee with personal knowledge of Vesco's comings and goings from the Brace Ridge Road home.

We find nothing presented in support of Vesco's motion to controvert what is established by the affidavits supporting the facts we have just recited. The arguments to the effect that Vesco was domiciled in Costa Rica, that he had various places of residence, and that his whereabouts were at all times a matter of public knowledge are of no more validity or relevance here than they were in connection with the first of the two consolidated appeals (78-7092).

The summons and complaint were clearly "left" at Vesco's residence and Judge Stewart so found in his opinion of May 2, 1978. As in the case of the service made by Miss Yohonn, we think there was a clear compliance with the constitutional requirements of due process.

## CONCLUSION

Further delay in this Vesco situation is intolerable. After five years of procedural maneuvers it surely is time to clear the decks for action and prevent further dissipation of assets that should be available to reimburse the investors who have been defrauded.

In each of the two consolidated appeals the order is affirmed with costs.

process in the within action on defendant Robert L. Vesco, and it is further

"Ordered, that service of process upon said defendant may be (i) by any method of service of process authorized by Rule 4 of the Federal Rules of Civil Procedure; or (ii) by leaving a copy of the summons and complaint herein upon the premises of the defendant's last known residence in Nassau, The Bahamas and mailing a copy thereof to the defendant at either the Post Office Box of the defendant or to the address of the last known residence of the defendant in Nassau, The Bahamas."