# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

1317
CA 11-01162
PRESENT: SCUDDER, P.J., CENTRA, FAHEY, CARNI, AND SCONIERS, JJ.

---

IN THE MATTER OF FORECLOSURE OF TAX LIENS BY
PROCEEDING IN REM PURSUANT TO ARTICLE 11 OF
THE REAL PROPERTY TAX LAW BY CITY OF ROCHESTER.
-------------------------------------------------   MEMORANDUM AND ORDER
MITCHELL DUVALL, PETITIONER-APPELLANT;

CITY OF ROCHESTER, RESPONDENT-RESPONDENT.

---

ANGELO T. CALLERI, P.C., ROCHESTER (ANGELO T. CALLERI OF COUNSEL), FOR
PETITIONER-APPELLANT.

ROBERT J. BERGIN, CORPORATION COUNSEL, ROCHESTER (JOHN M. CAMPOLIETO
OF COUNSEL), FOR RESPONDENT-RESPONDENT.

---

Appeal from an order of the Supreme Court, Monroe County (John J. Ark, J.), entered January 25, 2011.  The order denied the application of petitioner to vacate a judgment of foreclosure and the tax foreclosure deed.

It is hereby ORDERED that the order so appealed from is affirmed without costs.

Memorandum:  Petitioner commenced this proceeding seeking, inter alia, to vacate and set aside a judgment of foreclosure and the tax foreclosure deed.  Supreme Court properly denied the application. Until April 2010, petitioner was the owner of 135 Weld Street in Rochester and had resided continuously at the property since 1964 when he purchased the property with his late wife.  On July 1, 2008, respondent levied the 2008-2009 city taxes on the property.  In the fall of 2008 and the spring of 2009, respondent sent notices of nonpayment to petitioner by ordinary mail.  In addition, when the 2009-2010 tax bill was issued in July 2009, the bill sent to petitioner by ordinary mail included a statement of the delinquent 2008-2009 taxes.  Petitioner made partial payments for his taxes in April, July, October, and December 2009, as well as in January 2010, but a balance remained and no payments were made after January 2010. On December 16, 2009, respondent commenced a foreclosure action and sent notice thereof to petitioner by ordinary mail, in addition to publishing the notice.  On February 26, 2010, respondent sent another notice to petitioner by ordinary mail informing him that his property would be sold or taken by respondent on March 19, 2010 in the event that it was not redeemed from foreclosure by March 18, 2010.  After receiving no payment from petitioner, respondent sold the property on March 19, 2010, with respondent being the purchaser, and a tax foreclosure deed was recorded on April 29, 2010.  On May 6, 2010,

petitioner was personally served with a 10-day notice to quit.  When he was served with that notice, petitioner, who is illiterate, asked the process server to read the document to him.  He then immediately took the document to his attorney.  His attorney contacted respondent's attorney (corporation counsel) in an effort to allow petitioner to pay the back taxes and remain in his home, but corporation counsel informed petitioner's attorney that the foreclosure was final and there was nothing that could be done.

We reject petitioner's contention that he was deprived of due process based on respondent's failure to provide him with adequate notice of the foreclosure action.  Pursuant to both the federal and state constitutions, a person may not be deprived of property without due process of law (*see* US Const 14th Amend; NY Const, art I, § 6; *Kennedy v Mossafa*, 100 NY2d 1, 8).  "Due process does not require that a property owner receive actual notice before the government may take his [or her] property" (*Jones v Flowers*, 547 US 220, 226).  Rather, due process is satisfied by "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" (*Mullane v Central Hanover Bank & Trust Co.*, 339 US 306, 314; *see Kennedy*, 100 NY2d at 9).  "Due process is a flexible concept, requiring a case-by-case analysis that measures the reasonableness of a municipality's actions in seeking to provide adequate notice" (*Matter of Harner v County of Tioga*, 5 NY3d 136, 140; *see Walker v City of Hutchinson*, 352 US 112, 115; *Matter of County of Clinton [Bouchard]*, 29 AD3d 79, 83).  "A balance must be struck between the [municipality's] interest in collecting delinquent property taxes and [that] of the property owner in receiving notice" (*Harner*, 5 NY3d at 140; *see Kennedy*, 100 NY2d at 10-11).

Here, petitioner does not dispute that respondent provided all of the statutorily required notices to him.  All of those notices were sent to his address, where he was living.  Petitioner's only defense is that he is illiterate and that representatives of respondent knew of his illiteracy, and respondent therefore should have provided alternative notice in order to fulfill its due process requirements.  Although respondent contends that there is no evidence in the record that its representatives were aware of petitioner's illiteracy, we assume for the purpose of this appeal that petitioner's statements in his affidavit with respect to that issue are true (*see Covey v Town of Somers*, 351 US 141, 145-146).

"[U]nder most circumstances, notice sent by ordinary mail is deemed reasonably calculated to inform interested parties that their property rights are in jeopardy" (*Weigner v City of New York*, 852 F2d 646, 650, *cert denied* 488 US 1005).  Petitioner relies on two United States Supreme Court cases in which the Court concluded that the notice sent to the property owner by ordinary mail was insufficient.  In *Robinson v Hanrahan* (409 US 38), the property owner was arrested for armed robbery, and the State of Illinois (State) immediately began forfeiture proceedings against his automobile.  The State mailed notice of the proceedings to the property owner's home, but he was being held in jail awaiting trial (*id.* at 38-39).  The Court concluded

that the State knew that the property owner was not at his address and could not get there to retrieve the notice and, under those circumstances, the State failed to provide notice that was reasonably calculated to apprise him of the forfeiture proceedings (*id.* at 40). In *Covey* (351 US at 144-145), the Town of Somers (Town) instituted a foreclosure proceeding against a property owner known by the Town to be incompetent and without a conservator, but the Town nevertheless mailed notice of the foreclosure action to her address. A judgment of foreclosure was entered after she failed to answer and, less than two months later, she was declared of unsound mind and committed to a hospital for the insane (*id.* at 144). The Court concluded that "[n]otice to a person known to be an incompetent who is without the protection of a guardian does not measure up to" the requirement that notice be reasonably calculated, under all the circumstances, to apprise him or her of the pendency of the action (*id.* at 146).

Unlike the property owner in *Robinson*, here, petitioner received written notice of the foreclosure action. Although the property owner in *Covey* also received such notice, she did not have a guardian or other person available to ensure that she understood the notices that were sent to her. Petitioner, however, was not incompetent. We must balance the interests of petitioner as the property owner and respondent as the municipality and, "[i]n striking such balance, [we] may take 'into account the status and conduct of [petitioner] in determining whether notice was reasonable' " (*Harner*, 5 NY3d at 140, quoting *Kennedy*, 100 NY2d at 11). We conclude that respondent satisfied the requirements of due process by mailing the notices to petitioner. "Ownership carries responsibilities" (*Kennedy*, 100 NY2d at 11) and, "[a]s a property owner, [petitioner] is fairly 'charged with the knowledge that property taxes are regularly levied and that a default may result in a forfeiture' " (*Bouchard*, 29 AD3d at 84; *see Weigner*, 852 F2d at 651).

We sympathize with petitioner's situation, inasmuch as he has lived at the property since 1964 and has not abandoned it, he relies on limited income to pay his bills, and the amount of tax due was a small percentage of the market value of his property. Nevertheless, respondent established that petitioner's property was the subject of six prior tax foreclosure actions and submitted evidence that petitioner was aware of at least two of those actions. Petitioner admitted that either his daughter or his attorney read his mail to him, but in this instance neither of those individuals read the foreclosure notices to him. It was reasonable for respondent to believe that petitioner had someone read his mail to him. To hold that a municipality must provide notice other than by ordinary mail to persons it knows to be illiterate, or who it knows cannot read English, would place an unreasonable burden on the municipality. The burden that is placed on a municipality is a factor to consider in determining whether the municipality's efforts to provide notice to the property owner were reasonable (*see Matter of ISCA Enters. v City of New York*, 77 NY2d 688, 701, *rearg denied* 78 NY2d 952, *cert denied* 503 US 906). In *Matter of Smith* (52 NY 526, 530), a case involving publication of an ordinance before it was approved, the Court of Appeals determined that such notice may be sufficient inasmuch as the

property owner knows where to look for the notice, "and if he cannot read the language himself he may easily find [someone] who can."

Although a property owner's "ability to take steps to safeguard [his or her] interests does not relieve the [municipality] of its constitutional obligation" (*Mennonite Bd. of Missions v Adams*, 462 US 791, 799), we conclude that respondent's actions in mailing the notice to petitioner were "reasonably calculated, under all the circumstances, to apprise [petitioner] of the pendency of the [foreclosure] action and afford [him] an opportunity to present [his] objections" (*Mullane*, 339 US at 314).

All concur except FAHEY and SCONIERS, JJ., who dissent and vote to reverse in accordance with the following Memorandum: We respectfully dissent and would reverse the order and grant petitioner's application seeking, inter alia, to vacate the judgment of foreclosure. At the outset, we conclude that Supreme Court erred in determining that it was "powerless" to vacate the judgment of foreclosure entered upon petitioner's default. The court has "the inherent authority to vacate the default judgment 'for sufficient reason and in the interests of substantial justice' " (*Matter of County of Ontario [Middlebrook]*, 59 AD3d 1065, quoting *Woodson v Mendon Leasing Corp.*, 100 NY2d 62, 68). Here, the record establishes that petitioner is presently age 91 and owned the subject property from 1964 until April 2010. The record further establishes that petitioner is an illiterate widower who relies on limited income to pay his bills, and that the amount of tax due was a very small percentage of the market value of his property. In our view, respondent knew or should have known of petitioner's illiteracy and, given the circumstances of this case, the court improvidently exercised its discretion in denying petitioner's application (*see id.*). "We thus conclude 'that this [would be] an appropriate case in which to exercise our broad equity power to vacate [the] default judgment' " (*id.*).

We further conclude that the court erred in denying petitioner's application for the independent reason that petitioner was deprived of due process based on respondent's failure to provide him with adequate notice of the foreclosure action. To satisfy due process, notice must be " 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action' " (*Jones v Flowers*, 547 US 220, 226, quoting *Mullane v Central Hanover Bank & Trust Co.*, 339 US 306, 314). Generally, "notice sent by ordinary mail is deemed reasonably calculated to inform interested parties that their property rights are in jeopardy" (*Weigner v City of New York*, 852 F2d 646, 650, *cert denied* 488 US 1005). However, "[t]he means employed [to provide notice] must be such as one desirous of actually informing the [parties] might reasonably adopt to accomplish it" (*Mullane*, 339 US at 315). Thus, " 'notice required will vary with circumstances and conditions' " (*Jones*, 547 US at 227, quoting *Walker v City of Hutchinson*, 352 US 112, 115).

Where the government has "knowledge that notice pursuant to the normal procedure was ineffective[, there arises] an obligation on the government's part to take additional steps to effect notice" (*id.* at

230).  Here, respondent was or should have been aware that petitioner was illiterate, and his illiteracy was a significant circumstance or condition that weighed against a "reasonabl[e] calculat[ion]" that the usual method of mailing the foreclosure notice would apprise petitioner of the foreclosure action (*id.* at 226).  Put differently, "[n]o one 'desirous of actually informing' " the elderly, illiterate petitioner that his house was in foreclosure would reasonably think that sending him a letter would give him notice of the impending foreclosure (*id.* at 229).  Consequently, under the particular circumstances of this case, we conclude that petitioner, who we note must pay his taxes and must be accountable for tax delinquency (*see id.* at 234), was not provided with adequate notice of the impending taking.  We further conclude that, while it is not our responsibility to prescribe the form of notice to be provided to petitioner (*see id.*), we are confident that there were reasonable steps respondent could have taken to inform petitioner of his tax delinquency (*see id.* at 238).

Entered:  February 17, 2012                    Frances E. Cafarell
                                               Clerk of the Court