Hetelekides v County of Ontario (2021 NY Slip Op 02697)





Hetelekides v County of Ontario


2021 NY Slip Op 02697


Decided on April 30, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 30, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., LINDLEY, CURRAN, AND BANNISTER, JJ.


1119 CA 20-00680

[*1]KRYSTALO HETELEKIDES, INDIVIDUALLY AND AS THE EXECUTRIX OF THE ESTATE OF DEMETRIOS HETELEKIDES, ALSO KNOWN AS JIMMY HETELEKIDES, DECEASED, PLAINTIFF-RESPONDENT-APPELLANT,
v
COUNTY OF ONTARIO AND GARY G. BAXTER, AS TREASURER OF COUNTY OF ONTARIO, DEFENDANTS-APPELLANTS-RESPONDENTS.






JASON S. DIPONZIO, P.C., ROCHESTER (JASON S. DIPONZIO OF COUNSEL), FOR DEFENDANTS-APPELLANTS-RESPONDENTS. 
ADAMS LECLAIR, LLP, ROCHESTER (MARY JO S. KORONA OF COUNSEL), FOR PLAINTIFF-RESPONDENT-APPELLANT. 


 Appeal and cross appeal from an order of the Supreme Court, Ontario County (John J. Ark, J.), entered January 3, 2020. The order, among other things, awarded plaintiff money damages as against defendants. 
It is hereby ORDERED that the order so appealed from is unanimously modified on the law by vacating the first, seventh, eighth, tenth and eleventh ordering paragraphs and as modified the order is affirmed without costs.
Memorandum: Defendants appeal and plaintiff cross-appeals from an order entered after a nonjury trial that, inter alia, awarded plaintiff damages, interest, and costs after determining that a tax foreclosure proceeding with respect to certain property was a nullity and dismissed plaintiff's fifth cause of action. Plaintiff is the current owner of property in the Town of Hopewell on which a restaurant is located. Until his death on August 1, 2006, plaintiff's husband, Demetrios Hetelekides, also known as Jimmy Hetelekides (decedent), was the sole owner of the property and the sole shareholder of Geo-Tas, Inc., the corporation that ran the restaurant. After property taxes were not paid on the property for the year 2005, the property was placed on a list of properties affected by delinquent tax liens, and that list was filed in accordance with RPTL 1122 (1), (4) and (7). As required by statute, that list must include "[t]he name or names of the owner or owners of each such parcel as appearing on the tax roll," i.e., in this case, decedent (RPTL 1122 [6] [b]).
On October 2, 2006, after the property taxes remained unpaid, the enforcing officer here, defendant Gary G. Baxter, as Treasurer of the County of Ontario (see RPTL 1102 [3]), commenced a tax foreclosure proceeding by executing and filing with the County Clerk a petition of foreclosure pertaining to, inter alia, the subject property (see RPTL 1123 [1], [2] [a]). Pursuant to RPTL 1125 (1) (a) (i) and (b) (i) notices of foreclosure are to be sent by certified mail and ordinary first class mail to "each owner and any other person whose right, title, or interest was a matter of public record as of the date the list of delinquent taxes was filed, which right, title or interest will be affected by the termination of the redemption period, and whose name and address are reasonably ascertainable from the public record" (RPTL 1125 [1] [a] [i]). "The notice[s] shall be deemed received unless both the certified mailing and the ordinary first class mailing are returned by the United States postal service within forty-five days after being mailed" (RPTL 1125 [1] [b] [i]). Here, three notices of foreclosure were sent by certified mail to "James Hetelekides," "Hetelekides[,] James," and "Geo-Tas[,] Inc." First class mailings were sent "to the same people" that received certified mailings.
An employee of the restaurant signed the certified mail receipts, and none of the first class mailings were returned to defendants. In addition to the mailings, Baxter listed the foreclosure notices on three dates in two local newspapers, as required by RPTL 1124 (1), and posted the notices as required by RPTL 1124 (4). The last day for payment of delinquent taxes on the subject property for purposes of redemption was January 12, 2007.
In late December 2006 or early January 2007, Baxter reviewed properties from the list of delinquent taxes that had yet to be redeemed. Upon seeing that the subject property had not been redeemed, he called the restaurant on January 9 and January 10, 2007 and informed the employee who answered the telephone that it was "very imperative or very important" that he speak to an owner or manager. Both times, he was told that no such person was available, prompting him to leave messages requesting a return telephone call. After receiving no return telephone call, Baxter visited the property on January 11, 2007, and again asked to speak with an owner or manager, telling the employee with whom he spoke that it was "very important" that he talk to such a person. Again, he was told that no owner or manager was available. As a result, Baxter left his business card with the employee.
The property was not redeemed by January 12, 2007, and a default judgment of foreclosure was entered on February 8, 2007. Plaintiff subsequently attempted to repurchase the property pursuant to RPTL 1166, to no avail. The property was sold at auction for $160,000, and the purchaser then assigned his bid to plaintiff. Plaintiff thereafter commenced this action seeking, inter alia, damages that in effect represented the difference between the amount of taxes owed on the property, which was $21,343.17, and the auction price plus interest. Defendants' motion to dismiss the complaint was denied, and we affirmed that order (Hetelekides v County of Ontario, 70 AD3d 1407 [4th Dept 2010]). Following discovery, defendants moved for summary judgment dismissing the complaint. After that motion was denied, the matter proceeded to a nonjury trial.
Following the trial, Supreme Court determined, inter alia, that the tax foreclosure proceeding was a nullity and that plaintiff was owed damages, interest and costs. The court, however, concluded that there was legally insufficient evidence to support plaintiff's fifth cause of action, which alleged that defendants were liable for damages and attorney's fees under 42 USC §§ 1983 and 1988, and therefore dismissed that cause of action.
We conclude that the court erred in determining that the tax foreclosure proceeding was a nullity and in awarding damages, interest and costs to plaintiff, but we further conclude that the court properly dismissed the fifth cause of action.
Contrary to defendants' initial contention on appeal, we conclude that the court did not err in denying their motion for summary judgment. Defendants failed to establish their entitlement to judgment as a matter of law on any of plaintiff's causes of action (see generally Zuckerman v City of New York, 49 NY2d 557, 562 [1980]).
With respect to the determination after trial, we conclude that the evidence established that defendants fully complied with all of the statutory and due process requirements related to this tax foreclosure proceeding and that any determination to the contrary could not be reached under any fair interpretation of the evidence (see generally Thoreson v Penthouse Intl., 80 NY2d 490, 495 [1992], rearg denied 81 NY2d 835 [1993]; Cianchetti v Burgio, 145 AD3d 1539, 1540-1541 [4th Dept 2016], lv denied 29 NY3d 908 [2017]). We thus conclude that plaintiff was not entitled to any relief.
In addition to persons not relevant to this appeal, RPTL 1125 former (1) and current RPTL 1125 (1) (a) (i), specify that the only other people entitled to notice of a tax foreclosure proceeding are those persons whose right, title or interest in the property was a matter of public record "as of the date the list of delinquent taxes was filed" and whose "right, title or interest will be affected by the termination of the redemption period" (emphasis added). Here, the list of delinquent taxes was filed on November 14, 2005, when decedent was still alive. Plaintiff was thus not entitled to notice under that statute (see Matter of Barnes v McFadden, 25 AD3d 955, 957 [3d Dept 2006], appeal dismissed 6 NY3d 890 [2006]).
In October 2006, when the notices were sent, RPTL 1125 former (1) provided that each [*2]owner would be notified of the tax foreclosure proceeding by "certified mail" and that any other person with an interest in the property would be notified "by ordinary first class mail" (see L 2006, ch 415, § 1). Amendments to the statute became effective November 23, 2006 (see L 2006, ch 415, § 1). The amended statute requires that all notices be mailed "both by certified mail and ordinary first class mail" (RPTL 1125 [1] [b] [i]; see L 2006, ch 415, § 1).
Although it appears that, at the time the notices were sent, defendants were not required by statute to mail notices by both certified mail and ordinary first class mail, they did so, thus complying with both the former statute and the amended statute. As noted, pursuant to the amended statute, "notice shall be deemed received unless both the certified mailing and the ordinary first class mailing are returned by the United States postal service within forty-five days after being mailed" (RPTL 1125 [1] [b] [i] [emphasis added]). If both are returned, then and only then is the enforcing officer, i.e., Baxter, obligated to investigate alternative addresses for the relevant person (see id.). Inasmuch as none of the mailings were returned, Baxter was under no further obligation to obtain alternative addresses.
Nothing in RPTL 1125 shall be construed to preclude the enforcing officer from issuing, at his or her discretion, duplicate notices or informal notices to interested persons (see RPTL 1125 [4] [a], [b]). Nevertheless, "[t]he failure of the enforcing officer to mail any such discretionary notice, or the failure of an intended recipient to receive such a notice, shall not invalidate any tax or prevent the enforcement of the same as provided by law" (RPTL 1125 [4] [c]).
Inasmuch as Baxter fulfilled all of his statutory requirements, we conclude that the court could not have reached its determination that defendants failed to comply with RPTL 1125 under any fair interpretation of the evidence (see generally Cianchetti, 145 AD3d at 1540-1541). That does not end the analysis. Although meeting the statutory notice requirements will generally suffice for due process purposes, there are times that due process requires more (see United States v Braunig, 553 F2d 777, 780 [2d Cir 1977], cert denied 431 US 959 [1977]).
"Under both the federal and state constitutions, the State may not deprive a person of property without due process of law" (Matter of Harner v County of Tioga, 5 NY3d 136, 140 [2005]; see US Const 14th Amend; NY Const, art I, § 6; Kennedy v Mossafa, 100 NY2d 1, 8-9 [2003]). Although due process does not require actual notice (see Jones v Flowers, 547 US 220, 226 [2006]; Matter of City of Rochester [Duvall], 92 AD3d 1297, 1298 [4th Dept 2012]), the United States Supreme Court has stated that due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" (Mullane v Central Hanover Bank & Trust Co., 339 US 306, 314 [1950]; see Kennedy, 100 NY2d at 9). The Mullane standard has been strengthened by language contained in Mennonite Bd. of Missions v Adams (462 US 791, 800 [1983]), wherein the Court wrote "Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable." Additionally, "[d]ecisions following Mullane . . . , including Covey v Town of Somers, [351 US 141, 146 (1956)], and, more recently, Robinson v Hanrahan, [409 US 38, 39-40 (1972)], make clear that where a State or municipality knows that the person's condition or location is such that he [or she] will not be adequately apprised of the proceeding in question through the statutory method of notice used, the [requirements of the] due process clause will not have been [met]" (Braunig, 553 F2d at 780).
In addressing the concept of due process under Mullane, the Court of Appeals has written, "[d]ue process is a flexible concept, requiring a case-by-case analysis that measures the reasonableness of a municipality's actions in seeking to provide adequate notice. A balance must be struck between the State's interest in collecting delinquent property taxes and those of the property owner in receiving notice . . . In striking such balance, the courts may take 'into account the status and conduct of the owner in determining whether notice was reasonable' " (Harner, 5 NY3d at 140 [emphasis added]; see Kennedy, 100 NY2d at 10-11).
Inasmuch as Baxter complied with the statutory requirements, the question is whether due process required defendants to do something more where, as here, there is evidence that [*3]defendants became aware of decedent's death after the notices were sent but before the redemption period expired. Assuming, arguendo, that due process did require more under the circumstances of this case (but see Matter of County of Ontario [Helser], 72 AD3d 1636, 1637 [4th Dept 2010]; Barnes, 25 AD3d at 956), we conclude that defendants took steps beyond what was required in the statute in an attempt to provide notice to interested persons (see Bender v City of Rochester, 765 F2d 7, 9-12 [2d Cir 1985]; cf. Orra Realty Corp. v Gillen, 46 AD3d 649, 651 [2d Dept 2007], lv denied 10 NY3d 712 [2008]).
In striking the balance that the due process analysis requires, we note that, inasmuch as no Surrogate's Court proceeding had been commenced, defendants could not have been aware of those people whose interests in the property arose after decedent's death. Moreover, despite three personal attempts to talk to someone with authority at the restaurant and provide that person with actual notice, no owner or manager was ever made available until after the redemption period had ended. To require more of defendants would be unreasonable.
The court further determined that the tax foreclosure proceeding was a nullity because "[d]efendants commenced the foreclosure action against a deceased party." In support of that determination, the court cited Matter of Foreclosure of Tax Liens (165 AD3d 1112, 1116 [2d Dept 2018], appeal dismissed and lv denied 35 NY3d 998 [2020] [Goldman]), Wendover Fin. Servs. v Ridgeway (93 AD3d 1156, 1157 [4th Dept 2012]), and several in personam jurisdiction cases. We agree with defendants that Goldman should not be followed and that the remaining cases cited by the court are distinguishable.
The Second Department, in Goldman, relied upon in personam jurisdiction cases in support of the general proposition that a legal action or proceeding cannot be commenced against a dead person (165 AD3d at 1116, citing Krysa v Estate of Qyra, 136 AD3d 760, 760-761 [2d Dept 2016], lv denied 27 NY3d 907 [2016]; Marte v Graber, 58 AD3d 1, 3 [1st Dept 2008]; Jordan v City of New York, 23 AD3d 436, 437 [2d Dept 2005]) and one mortgage foreclosure action (id., citing Dime Sav. Bank of N.Y. v Luna, 302 AD2d 558, 558 [2d Dept 2003]). Our decision in Wendover Fin. Servs. also dealt with a mortgage foreclosure action. Aside from Goldman, all of the cited cases must be distinguished from in rem tax foreclosure proceedings.
Individuals, as well as entities, are necessary parties in in personam cases (see generally Gager v White, 53 NY2d 475, 485 [1981], cert denied 454 US 1086 [1981]) and, as a result, reliance on such cases is misplaced in this in rem proceeding. In addition, by statute, mortgagors are necessary party defendants to mortgage foreclosure actions (see RPAPL 1311 [1]). In contrast, a petition in a tax foreclosure proceeding relates only to the property and not any particular person (see RPTL 1123 [2] [a]). The distinction between in rem tax foreclosure proceedings and mortgage foreclosure actions with respect to the "parties" is critical. While an action or proceeding cannot be commenced against a dead person who, by necessity, is a named party to the action (see Wendover Fin. Servs., 93 AD3d at 1157; Marte, 58 AD3d at 3), a tax foreclosure proceeding is not commenced against any person; it is commenced against the property itself. The owners are not necessary "parties" to the tax foreclosure proceeding; they are only "[p]arties entitled to notice" of the proceeding (RPTL 1125 [1] [a]; see RPTL 1123 [1], [2] [a]; cf. RPAPL 1131). As a result, the tax foreclosure proceeding was properly commenced even though decedent had died (see generally Bender, 765 F2d at 8-9), and there was no need to substitute someone for the dead owner (see CPLR 1015).
We thus conclude that the court's determination that the tax foreclosure proceeding was a nullity could not be reached under any fair interpretation of the evidence (see generally Cianchetti, 145 AD3d at 1540-1541) and that the court erred in awarding plaintiff damages, interest and costs. We thus modify the order accordingly.
With respect to plaintiff's cross appeal, we have reviewed her contentions and conclude that they lack merit. Contrary to plaintiff's contention, the court's decision on her fifth cause of action is based on a fair interpretation of the evidence (see generally id.).
Entered: April 30, 2021
Mark W. Bennett
Clerk of the Court